**Nancy (Beckwith) NAGGATZ,
Appellant–Respondent,**

v.

**David BECKWITH, Appellee–
Petitioner.**

No. 64A03–0401–CV–31.

Court of Appeals of Indiana.

June 11, 2004.

Transfer Denied Sept. 9, 2004.

Lynn Hammond, Merrillville, IN, Attorney for Appellant.

Duane W. Hartman, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Nancy Naggatz appeals the trial court's order modifying the child support payments of appellee-petitioner David Beckwith to provide support for their nineteen-year-old daughter, M.B. Specifically, Naggatz contends that the trial court improperly "modified the parties' stipulation that [Beckwith] pay" all of M.B.'s college expenses. Appellant's Br. p. 12. Moreover, Naggatz claims that the trial court erred when it adopted the figure of $74,000 per year as Beckwith's income. Additionally, Naggatz claims that the trial court miscalculated the amount of child support in arrearage owed to her by Beckwith. Finally, Naggatz contends that the trial court erred in providing that Beckwith pay all of M.B.'s uninsured medical expenses. Concluding that no error occurred, we affirm.

*FACTS*

Naggatz and Beckwith divorced in 1986. Naggatz was awarded primary physical custody of their only child, M.B., born February 4, 1985, with Beckwith ordered to pay child support. The record—though sparse on this point—indicated that on April 16, 2001, Beckwith was ordered to pay $150 per week in child support.

On June 3, 2003, Naggatz filed her Petition to Modify Child Support and for Education Expenses, in anticipation of M.B.'s enrollment at Indiana State University. On October 22, 2003, the trial court held a hearing at which argument of counsel was heard and unverified exhibits were submitted. The parties submitted a stipulation—which deviated from the amount Beckwith would pay under Indiana's Child Support Guidelines—that Beckwith pay all of M.B.'s college expenses and uninsured health care expenses in lieu of child support. On November 17, 2003, the trial court issued its order providing that Beckwith pay $10,040 a year in college expenses plus $3,684 in uninsured health care expenses. This figure differed slightly from the stipulated figure, as the trial court apportioned $2,625—the amount of a Stafford Loan—as M.B.'s share of her college expenses instead of ordering that M.B. pay the proceeds of the loan to Beckwith. Naggatz now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Initially, we note that decisions regarding child support are generally within the sound discretion of the trial court. *Thacker v. Thacker,* 710 N.E.2d 942, 944 (Ind.Ct.App.1999). We will reverse the trial court's child support order only where the determination is clearly against the logic and effect of the facts and circumstances. *Fields v. Fields,* 749 N.E.2d 100, 104 (Ind.Ct.App.2001), *trans. denied.* On

appeal, this Court will consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

## II. M.B.'s Share of Educational Expenses

■ Naggatz contends that the trial court erred when it deviated from the stipulation and allocated the amount of the Stafford Loan as M.B.'s portion of educational expenses. Naggatz argues that in assigning the value of the Stafford Loan as M.B.'s obligation, the trial court deviated from the parties' stipulation and essentially required that M.B. pay a portion of her college expenses.

Naggatz notes that the trial court denied Beckwith's request to have M.B.'s Stafford Loan turned over to him but instead applied the loan to M.B.'s share of expenses on the "POST–SECONDARY EDUCATION WORKSHEET." Respondent's Ex. 7. Naggatz argues that the trial court's action does violence to the parties' stipulation because M.B. must now pay some of her own college expenses instead of the "100%" promised by Beckwith. Tr. p. 4. Beckwith counters that the trial court's order is well within its discretion, as the parties' intent was always that "M.B.'s Stafford loans [sic] would be applied to her college expenses." Appellee's Br. p. 3.

■ First, we note that "[w]hen custody, support, or visitation issues are being determined, the best interests of the child are the primary consideration." *In re Paternity of K.J.L.*, 725 N.E.2d 155, 158 (Ind. Ct.App.2000). "Though the wishes of the parent are to be given great weight, it is the duty of the trial court to determine if any agreement is in the best interests of the child." *Id.* Additionally, we note that our Child Support Guidelines do not view an award of college expenses as the obligation of a *parent* but instead state that

"the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Ind. Child Support Guideline 6. Moreover, our Guidelines specifically state that "scholarships, grants, student loans, summer and school year employment ... should be credited to the *child's share* of the educational expenses unless the court determines that it should credit a portion of any scholarships, grants, and loans to either or both parents' shares." *Id.* (emphasis added).

Even assuming, arguendo, that the parties' intent was to create a system whereby M.B. paid *no* college expenses, the trial court was within its discretion to assign the value of M.B.'s Stafford Loan as a "Child's Share" of educational expenses. Respondent's Ex. 7. Indeed, the Guidelines state that loans "should" be credited to "the child's share" of expenses unless a determination is made that the loans should be credited to a parent. Child. Supp. G. 6. Consequently, the trial court did not err in crediting the amount of M.B.'s Stafford Loan as her share of educational expenses.

## III. Father's Income

■ Naggatz claims that the trial court erred when it determined that Beckwith's income was $74,000 per year. Specifically, Naggatz contends that the trial court adopted Beckwith's 2003 salary of $74,000 per year as his yearly income but ignored the fact that his 2002 income was $122,085 and that his income at the time of trial was $86,008.

■ When reviewing the calculation of income attributable to a parent, we will not reverse the trial court's finding unless it is clearly erroneous. *Ratliff v. Ratliff,*

804 N.E.2d 237, 244 (Ind.Ct.App.2004). If the trial court's income figure includes the income required by our Child Support Guidelines and "falls within the scope of the evidence presented at the hearing," the trial court's determination is not clearly erroneous. *Id.* We also note that our Child Support Guidelines provide that "Overtime, Commissions, Bonuses and Other Forms of Irregular Income" are includable in the calculation of a parent's income for child support purposes. Child. Supp. G. 3(A). However, "each is also very fact-sensitive." *Id.*

Naggatz's main concern seems to be that in 2002, Beckwith earned $122,085 and that his current income was $86,008, a figure determined by multiplying Beckwith's reported weekly gross income of $1,654 by the fifty-two weeks in a year. Petitioner's Ex. 4. Naggatz's reasoning, however, ignores that Beckwith's 2002 income included bonuses, but the company that purchased Beckwith's former employer no longer pays bonuses. Tr. p. 25. Indeed—and rather redundantly—his new employer noted that Beckwith's "annual salary is $74,000 per year." Respondent's Ex. 6. Moreover, Petitioner's Exhibit 4—upon which Naggatz bases her calculation of Beckwith's income at $86,008, was an estimate, as Beckwith's attorney noted that his "understanding *at the time* was that [Beckwith] was making 76,[000]." Petitioner's Ex. 4 (emphasis added). In sum, the trial court's decision to adopt $74,000 as Beckwith's annual income is supported by the evidence and, thus, is not clearly erroneous.

### IV. Beckwith's Arrearage

■ Naggatz's next claim is that the trial court erred when it ordered that Beckwith pay twelve weeks of arrearages of child support at the original child support rate of $150 per week. Naggatz notes that inasmuch as she filed her petition to modify child support on June 3, 2003, the arrearages—at the new rate determined by the trial court for the summer months, $181.43 per week—should have been used for the trial court's arrearage calculation.

■ As Naggatz points out, a trial court has the discretion to order that a modification of child support relate back to the date that the petition to modify was filed. *Smith v. Mobley,* 561 N.E.2d 504, 508 (Ind.Ct.App.1990). "This rule serves to avoid encouragement of dilatory tactics and further the purposes of the changed circumstances rule." *Id.*

In *Talarico v. Smithson,* Talarico—the custodial parent—requested that a child support modification relate back to the date when Talarico filed her motion to modify child support. 579 N.E.2d 671, 674 (Ind.Ct.App.1991). Talarico had alleged that "[the child's father] delayed the hearing on the modification of child support by requesting continuances and failing to timely answer her discovery requests." *Id.* The trial court declined Talarico's request, and Talarico appealed. We affirmed, noting that "we cannot conclude that the trial court's decision granting [the father's] two requests for continuances and an extension of time in order to answer Talarico's request for admissions necessitated a determination that he unduly delayed the proceedings." *Id.*

Here, we note that Beckwith was, indeed, found in contempt for failing to pay child support as required and instead setting the child support payments "aside for [M.B.'s] education." Respondent's Ex. 4. To address this problem, the trial court ordered Beckwith to pay $500 of Naggatz's attorney fees. Appellant's App. p. 45. As for "dilatory tactics," we note that Beckwith filed one motion for a continuance between the date of Naggatz's filing and

the date the trial court entered its modification order. Appellant's App. p. 3. This is half the number of continuances requested by the father in *Talarico*. Thus, we cannot conclude that the trial court abused its discretion in refusing to calculate Beckwith's arrearage using the modified child support rate instead of the 2001 rate of $150 per week. As a result, Naggatz's claim must fail.

### V. M.B.'s Medical Expenses

Though unclear, Naggatz's argument with respect to M.B.'s medical expenses seems to be that the trial court's order is unfair unless Beckwith's "actual out-of-pocket expenses for [M.B.] equals" $3,447.88, the amount of child support [Naggatz] agreed to forfeit." Appellant's Br. p. 19. By way of comparison, Naggatz notes that as of August 21, 2003, Beckwith "had only expended [$1,851.02]" in medical care for M.B. Appellant's Br. p. 19.

■■■ First, and contrary to Naggatz claim that she "agreed to forfeit" child support payments as if they were her personal property, "the purpose of child support is the welfare of the child." *Smith v. Smith*, 793 N.E.2d 282, 284 (Ind.Ct.App. 2003). Moreover, medical expenses, by their very nature, will be "speculative" as the trial court noted, Appellant's App. p. 44, and could easily total *more* than $3,447.88. Finally, Naggatz ignores the fact that under our Child Support Guidelines, she would be responsible for an amount of medical expenses equal to the first "six percent (6%) of the basic child support obligation" plus "the child support obligation attributed to a student living away from home," Child.Supp. G. 3(A), for a total of $1,035.19.[1] In sum, because the trial court's decision requiring that Beck-

with "pay all of [M.B.'s] uninsured health care expenses" is not clearly against the logic and effect of the facts and circumstances, Naggatz's argument must fail.

### CONCLUSION

In light of the issues addressed, we conclude that the trial court did not err in crediting M.B.'s Stafford Loan as her share of educational expenses and in finding that Beckwith's annual income was $74,000. Moreover, the trial court did not abuse its discretion in refusing to order that Beckwith's arrearage be calculated using the modified child support rate and in ordering that Beckwith pay all of M.B.'s uninsured medical expenses.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

BAILEY, J., dissents with opinion.

BAILEY, Judge, dissenting.

I respectfully dissent from the affirmation of a "judgment" based on a "stipulation" that does not exist in the record. Indiana Trial Rule 16(c)(3) provides that the parties may narrow the issues for trial by a stipulation in writing referencing all facts and issues not in genuine dispute. Black's Law Dictionary (Fifth Ed.1983) defines "stipulate" as "arrange or settle definitely, as an agreement or covenant." Here, the parties were unable to settle any issue definitely prior to the October 22, 2003 proceedings.

In my view, nothing more than a settlement conference transpired on October 22, 2003, when the trial court heard argument of counsel as to what the parties would or would not be willing to stipulate to. When

---

1. The calculation is as follows: $243 Basic Child Support Obligation + $88.79 Support Obligation to Student = $331.79. This $331.79 multiplied by fifty-two weeks equals $17,253.08. Six percent of $17,253.08 is $1,035.19.

the negotiations went awry, the trial court entertained additional argument of counsel, accompanied by several unverified documents.

From the argument of counsel, it appears that Father informally agreed to pay all M.B's uninsured medical expenses and college expenses, after financial aid, conditioned upon his not paying weekly child support. Father apparently ceased paying child support as of June 6, 2003, and advised Mother that he was "setting aside" that $150.00 per week toward M.B.'s college expenses. (Resp. Ex.4.) Mother, who apparently agreed that Father should pay all M.B.'s educational and medical expenses, did not also agree that Father should be relieved of his basic child support obligation and filed her petitions for modification and contempt.

At the hearing, Mother's counsel advised the trial court that the parties had certain stipulations to present to the court, but also had certain conflicts, and would address the remaining issues in a summary fashion. Mother's counsel entreated the trial court to consider Father's offer to pay 100% of the uninsured medical and college expenses binding, rather than contingent on Mother's agreement to waive Father's basic child support payments. Mother requested that the court determine Father's current income, child support arrearage, and future child support obligation. Father's counsel claimed that Father offered to pay an amount that would exceed the Guideline amount computed by adding together his income-based proportionate share of college and medical expenses and partial child support, taking into account M.B.'s residency on campus. Too, Father argued that if he paid basic child support as well as all medical and educational expenses, Mother would be contributing nothing toward the support of M.B. As argument developed, it became clear that the parties had reached no stipulation to be presented to the trial court. The trial court observed as much at the conclusion of the hearing:

> I guess the thing that I'm toying with right now or troubling me a bit is that I'm not sure that [sic] dad's position— and I'm not sure it's unreasonable as I sit here hearing it for the first time—but I'm not sure it's something the court could impose on a parent, that kind of a deviation from the guidelines. But— and whether it's more or less than the obligation would be, you know, I guess I'm troubled and I've had this issue come up before. 'Judge, we've got stipulations,' and tell me what they are, and then as we get into it, they're really not stipulations at all, they're a framework for a good stipulation. But if you say, well, we're going to pay all the expenses, and there's no agreement as to what all the expenses are, then that's not really a stipulation.

(Tr. 34–35.) Despite the absence of stipulations, no sworn testimony was presented. The assertions of counsel constituted mere argument, not evidence. *See generally Kuester v. Inman,* 758 N.E.2d 96, 100 (Ind.Ct.App.2001) (differentiating between evidence and argument of counsel).

Moreover, the exhibits pertaining to parental income and expenses—unaccompanied by stipulations of admissibility—were unsworn and unverified. Although the parties submitted several alternative child support obligation worksheets, neither parent signed any worksheet. Since 1989, the Indiana Child Support Guidelines have required, in all cases in which the court is requested to order support, that both parents complete and sign a child support worksheet to be filed with the court verifying the parents' incomes under penalty of perjury. *Glover v. Torrence,* 723 N.E.2d 924, 941 (Ind.Ct.App.2000).

In some circumstances, summary proceedings may be appropriate. For example, a separate panel of this Court affirmed a marital property division judgment entered after "the trial court swore the parties and [held] summary proceedings in which counsel summarized their client's testimony and the clients verified that the statements made by their respective attorneys were accurate." *Trout v. Trout*, 638 N.E.2d 1306, 1307 (Ind.Ct.App.1994). Here, in contrast to the circumstances of *Trout*, no witnesses were sworn and the trial court did not advise the parties at the outset of the hearing that evidence would be taken in a summary manner. Rather, counsel advised the trial court that the parties were prepared to present their joint stipulation on child support. This initial representation proved to be untrue. The end result of failed in-court negotiations and haphazard proffers of unverified exhibits is that the trial court's calculation of parental income and child support arrearage, and its modification of the existing child support order to include all educational expenses but exclude all regular child support are wholly without evidentiary support.

When it became apparent to the trial court that the parties had not, in fact, reached a stipulation as to the terms of a modified child support order, the trial court could have heard the testimony of witnesses under oath, pursuant to Indiana Evid. Rule 603. Alternatively, the trial court could have considered child support worksheets signed under penalty of perjury. It did not do so. Consequently, there is a total absence of sworn testimony or verified exhibits to support a judgment and the hearing was in essence a settlement conference. Thus, in my opinion, the trial court abused its discretion by ordering modification of support. Therefore, I dissent from the majority opinion and I would reverse the judgment of the trial court.