Edwin EPPLER, Appellant,

v.

Jane EPPLER, Appellee.

No. 79A02–0501–CV–35.

Court of Appeals of Indiana.

Nov. 14, 2005.

Jill E. Goldenberg, Heather S. Wysong Zaiger, Cohen Garelick & Glazier, P.C., Indianapolis, IN, Attorneys for Appellant.

Christine A. DeSanctis, Lafayette, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Edwin ("Husband") and Jane ("Wife") Eppler's marriage was dissolved in Tippecanoe Superior Court. Husband appeals the trial court's dissolution order and raises several issues, which we restate as:

I. Whether the trial court abused its discretion when it calculated Husband's child support obligation;

II. Whether the trial court abused its discretion in calculating Wife's financial obligation under the Six Percent Rule;

III. Whether the trial court abused its discretion when it ordered Husband to pay one hundred percent of the children's counseling expenses;

IV. Whether the trial court abused its discretion when it ordered Husband to pay one hundred percent of the children's future college expenses;

V. Whether the trial court abused its discretion when it refused to order Wife to release to Husband the state and federal dependent tax exemptions for the children; and,

VI. Whether the trial court erred when it ordered Husband to return certain personal property to Wife.

Concluding that Husband has failed to establish reversible error with regard to child support, medical and college expenses, and tax exemptions, but that the trial court erred when it ordered Husband to return property to Wife that she had abandoned, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Husband and Wife were married on May 12, 1991. Three children were born to the marriage: H.E., born December 15, 1993, E.E., born April 26, 1996, and D.E., born September 25, 1997. Husband is an emergency room physician. Wife owns her own business and is the primary caregiver for the children. Wife filed a Petition for Dissolution of Marriage on December 6, 2002. Hearings were held on Wife's petition on July 8, July 14, and August 24, 2004. Prior to those hearings, Husband

requested findings of fact and conclusions of law.

The trial court issued its findings of fact and conclusions of law on December 29, 2004, and found in pertinent part:

### Findings of Fact

13. Husband is currently earning gross pay from Lafayette Emergency Care, P.C. of $280,000 per year. The Court determines his gross income for the past three years to have averaged $6350.00 per week.

\* \* \*

15. Wife, who has a college degree in communications from Gonzaga University, is employed by All Fired Up!, Inc., a Sub Chapter S Corporation, in which Wife is the sole shareholder. The Court imputes weekly gross income of $400.00 to Wife.

\* \* \*

32. Prior to the date of separation, Husband set up section 529 college accounts for the children from marital funds. These college accounts are invested with American Funds and amount to approximately $26,000.00 per child.

\* \* \*

48. During the pendency of these proceedings, the parties divided up certain personal property. However, when Wife vacated the marital home on or about June 17, 2003, she left a variety of items at the marital home. Husband did not take possession of any of these items left in the marital home and the Court finds that those items of personal property left by the parties are deemed to have been abandoned by the parties and have no value.

49. Wife is seeking return of the following personal property from Husband:

All of Wife's summer clothes
All of Mary Hoyt's [s]ummer [c]lothes
Wife's jewelry, including 3 Tiffany bracelets, Tiffany earrings, and Tiffany necklace
Elliptical workout machine
All seasonal decorations
All children's toys
Handmade art work
Wife's Prince tennis racket
All Wife's personal identification documents, including Social Security card, passport, birth certificate, and college transcripts.
The children's documents, including birth certificates, Social Security cards, and shot records.

\* \* \*

53. The evidence showed that Wife and her family supported the parties when Husband was obtaining his medical school education and throughout his residency prior to starting his professional practice.

\* \* \*

56. The evidence showed that Husband has historically earned 95% to 100% of the family income and has a present and future superior earning ability over Wife. Until the start of All Fired Up! Inc., Wife was a stay-at-home mom.

### Conclusions of Law

5. Having considered the above findings, as well as the ages and sexes of the children; the wishes of the parents; the interrelationships and interaction of the parents with each other and with their children; and the physical and mental health of all individuals involved; the Court finds that it is in the best interests of the children to be in the legal custody of Wife, with Husband having visitation pursuant to the Indiana Par-

enting Time Guidelines and as otherwise agreed upon by the parties.

\* \* \*

7. Husband's work schedule does not allow every other weekend to be available for visitation. The children need frequent, regular contact with both parents. The children will be made available to Husband for mid week overnights equivalent to the weekend overnights called for in the Parenting Time Guidelines, in addition to day and/or evening visits.

\* \* \*

11. The minor children shall continue in counseling with Dr. Judith Anderson as recommended by Dr. Anderson. Husband shall be responsible for payment to Dr. Anderson of any amounts not covered by insurance.

12. Based upon the Indiana Child Support Guidelines, the financial circumstances of the parties, and the needs of the children, the Court finds that Husband should and shall pay child support in the sum of $900.00 per week to the Clerk of Tippecanoe County for remittance to Wife, for the benefit of the parties minor children. . . . As shown by the Child Support Obligations Worksheet attached as Exhibit "A", by strictly following the Child Support Guidelines, child support would be fixed in the approximate sum of $625.00 per week. The Court finds that a deviation from the Child Support Guidelines is just and reasonable, based upon the specific factual circumstances of this case, including the following: that Husband has earned considerably more than $250,000 per year for the last four years and can reasonably be expected to earn in that range during his working life, which he estimates to be another ten years; that a significant disparity exists between the parties' respective earnings and earning

ability; that the parties, who are in their mid-thirties, have been married for approximately thirteen years resulting in three children and that Wife and her family supported the parties when Husband was obtaining his medical school education and throughout his residency prior to starting his professional practice; that since 1996, when Husband began his professional practice, the parties have not accumulated significant net assets to be set aside for the benefit of Wife and the minor children to allow them to live a lifestyle that they have grown accustomed to; that $900.00 per week amounts to only 17% of Husband's current income; and as demonstrated by Husband's ability to substantially comply with the financial aspects of the Provisional Order in addition to supporting himself, Husband has established that he is capable of making these payments.

13. Husband shall carry health insurance for the benefit of the children through his employment or otherwise. Wife shall pay the first $2,206.87 per calendar year in reasonable and necessary medical, dental, optical, and prescription drug expenses for the children not covered by insurance. Thereafter, Husband shall pay 94% of the same and Wife shall pay 6% of those expenses.

14. The children's college funds shall be managed by Husband for the benefit of the children pursuant to the section 529 guidelines. Husband shall utilize these college funds to pay college expenses for each child. At such time as each child's college funds are exhausted, Husband shall pay 100% of the balance of any college costs.

15. Wife shall be entitled to claim the three children as exemptions for state and federal income tax reporting purposes.

Appellant's App. pp. 9–31. Husband now appeals. Additional facts will be provided as necessary.

### Standard of Review

■ Husband requested findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A),

> which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is to give due regard to "the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has made special findings of fact, as it did in this case, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment."

*Dunson v. Dunson,* 769 N.E.2d 1120, 1123 (Ind.2002) (internal citations omitted).

We also note that our supreme court recently made the following observations concerning the deference reviewing courts should give to a trial court's findings in family law matters:

> It is certainly true that appellate courts give considerable deference to the findings of the trial court in family law matters.... Whether the standard of review is phrased as "abuse of discretion" or "clear error," this deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess. Secondly, appeals that change the results below are especially disruptive in the family law setting. And third, the particularly high degree of discretion afforded trial courts

in the family law setting is likely also attributable in part to the "fluid" standards for deciding issues in family law cases that prevailed for many years.

> The third of these reasons has largely fallen by the wayside as the Legislature and this Court have promulgated a series of statutes, rules, and guidelines—standards that bring consistency and predictability to the many family law decisions. But, the importance of first-person observation and avoiding disruption remain compelling reasons for deference.

> We recognize of course that trial courts must exercise judgment, particularly as to credibility of witnesses, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.

*MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940–41 (Ind.2005) (footnote and internal citations omitted).

### I. Husband's Child Support Obligation

Husband argues that the trial court abused its discretion in calculating his child support obligation. Specifically, Husband asserts that 1) the trial court erred when it utilized his average weekly income from the previous three years instead of his current annual income, 2) he should have been given credit for ninety-eight overnight visits with the children, and 3) the trial court abused its discretion when it ordered him to pay $900 per week in child support, which is $275 more than

the award as calculated under the Child Support Guidelines.

## A. Husband's Income

When we review the calculation of a parent's income, we will not reverse the trial court's finding unless it is clearly erroneous. *Naggatz v. Beckwith*, 809 N.E.2d 899, 902 (Ind.Ct.App.2004), *trans. denied.* "If the trial court's income figure includes the income required by our Child Support Guidelines and 'falls within the scope of the evidence presented at the hearing,' the trial court's determination is not clearly erroneous." *Id.* at 903 (citation omitted).

In this case, the trial court found that Husband's current annual income is $280,000 per year and also determined that his gross income for the past three years averaged $6350.00 per week, or $330,200 per year. Appellant's App. p. 11. The trial court calculated Husband's child support obligation based on the income Husband earned during the marriage. The trial court attributed additional income to Husband, stating, "Husband has earned considerably more than $250,000 per year for the last four years and can reasonably be expected to earn in that range during his working life[.]" Appellant's App. p. 24.

Husband contends that the trial court erred when it utilized his average weekly income from the previous three years in calculating his child support obligation. Specifically, he argues that his income for the prior three years is not indicative of his current income because during those years he sold his business interest in Regional Occupational Care Group P.C. and his income decreased when he and his partners terminated their contract with a hospital in Batesville, Indiana.[1]

Husband's reliance on *Schaeffer v. Schaeffer*, 717 N.E.2d 915 (Ind.Ct.App. 1999), in support of his argument is unpersuasive. In *Schaeffer*, the trial court calculated Husband's income by averaging his gross income for the previous five years, and as a result, Husband's child support obligation was "based on a figure almost $40,000 less than his current income." *Id.* at 917–18. Our court concluded, "[b]y averaging Joseph's annual income where there has been only upward movement in wages over the past five years, the trial court granted Joseph a windfall that deprives G.S. of 'the same standard of living [she] would have enjoyed had the family remained intact.'" *Id.* at 918 (citation omitted). In this case, the opposite circumstance is presented, i.e. Husband's current income is less than his income for the previous three years.

Wife notes that Husband consistently worked at least twenty-two shifts per month during their marriage, but has reduced his work schedule to twelve to fifteen shifts per month. Therefore, Wife asserts that the trial court "correctly considered [Husband's] work history, his qualifications, and his job opportunities and earning levels in terms of making a determination of child support." Br. of Appellee at 10. In support of this argument, Wife directs our attention to Child Support Guideline Three, which states in pertinent part:

> If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and proba-

---

1. Husband earned approximately $25,000 from his contract with the Batesville hospital in 2001. Tr. p. 230.

ble earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Ind. Child Support Guideline 3 (2005).

In response, Husband correctly observes that " 'child support orders cannot be used to force parents to work to their full economic potential or make their career decision based strictly upon the size of potential paychecks.' " Reply Br. of Appellant at 4 (quoting *Elliott v. Elliott*, 634 N.E.2d 1345, 1349 (Ind.Ct.App.1994)). However, in this case, after Wife filed her petition for dissolution, Husband voluntarily and significantly reduced the number of shifts he works per month. Accordingly, we conclude that the trial court did not abuse its discretion when it attributed additional income to Husband based on his income during the marriage in determining that Husband's gross weekly income is $6350.

### B. *Overnight Visitation Credit*

■ Husband also argues that the trial court erred when it credited him with only fifty-two overnight visitations, and that he should have received credit for ninety-eight overnight visitations pursuant to Child Support Guideline 6. The trial court awarded legal custody of the children to Wife and granted Husband visitation pursuant to the Indiana Parenting Time Guidelines. The trial court also concluded, "[t]he children will be made available to Husband for mid week overnights equivalent to the weekend overnights called for in the Parenting Time Guidelines, in addition to day and/or evening visits." Appellant's App. p. 23.

The Child Support Guidelines provide that "[t]he Parenting Time Table (Table PT) begins at 52 overnights annually or the equivalent of alternate weekends of parenting time only.... If the parents are using the Parenting Time Guidelines

without extending the weeknight period into an overnight, the noncustodial parent will be exercising approximately 98 overnights." Child Supp. G. 6.

While we agree that if Husband were to exercise all visitation allowed under the Parenting Time Guidelines he would be entitled to credit for 98 overnights, the trial court's decision to give Husband credit for only 52 overnights is supported by the record. Husband testified that he had the children for nine overnights during their summer vacation. Tr. p. 358. Wife testified that Husband exercised overnight visitation approximately three days per month during the pendency of these proceedings. Tr. pp. 66–68. We therefore conclude that the trial court did not abuse its discretion when it gave Husband a parenting time credit for overnight visitation of one day per week, i.e. fifty-two days per year.

### C. *Deviation from the Child Support Guidelines*

■ Finally, Husband argues that the trial court abused its discretion when it deviated from the Child Support Guidelines and ordered him to pay $900 per week in child support. In 1989, our supreme court adopted the Child Support Guidelines "to facilitate adequate support awards for children, to make awards more equitable by ensuring consistent treatment of persons in similar circumstances, and to improve the efficiency of the process of determining support." *Garrod v. Garrod*, 655 N.E.2d 336, 338 (Ind.1995). The court has "advised trial courts that achieving these ends does not require treating the Guidelines as 'immutable, black letter law.' " *Id.* (citation omitted).

Rather, there are situations which call for flexibility and courts should "avoid the pitfall of blind adherence to the [Guidelines'] computation for support

without giving careful consideration to the variables that require changing the result in order to do justice" in such circumstances. Deviation is proper if strict application of the Guidelines would be "unreasonable, unjust, or inappropriate."

*Id.* (citations omitted); *see also In re Paternity of C.R.R.*, 752 N.E.2d 58, 61 (Ind. Ct.App.2001) (The Child Support Guidelines bear a rebuttable presumption of correctness, however, if the trial court finds that the Guideline amount is unjust or inappropriate in a particular case, the court may enter a support amount that is deemed appropriate.).

In its conclusions of law, the trial court issued the following order with regard to child support:

> Based upon the Indiana Child Support Guidelines, the financial circumstances of the parties, and the needs of the children, the Court finds that Husband should and shall pay child support in the sum of $900.00 per week to the Clerk of Tippecanoe County for remittance to Wife, for the benefit of the parties minor children.... As shown by the Child Support Obligations Worksheet attached as Exhibit "A", by strictly following the Child Support Guidelines, child support would be fixed in the approximate sum of $625.00 per week. The Court finds that a deviation from the Child Support Guidelines is just and reasonable, based upon the specific factual circumstances of this case, including the following: that Husband has earned considerably more than $250,000 per year for the last four years and can reasonably be expected to earn in that range during his working life, which he estimates to be another ten years; that a significant disparity exists between the parties' respective earnings and earning ability; that the parties, who are in their mid-thirties,

have been married for approximately thirteen years resulting in three children and that Wife and her family supported the parties when Husband was obtaining his medical school education and throughout his residency prior to starting his professional practice; that since 1996, when Husband began his professional practice, the parties have not accumulated significant net assets to be set aside for the benefit of Wife and the minor children to allow them to live a lifestyle that they have grown accustomed to; that $900.00 per week amounts to only 17% of Husband's current income; and as demonstrated by Husband's ability to substantially comply with the financial aspects of the Provisional Order in addition to supporting himself, Husband has established that he is capable of making these payments.

Appellant's App. p. 24.

Under the trial court's child support order, Husband's annual child support obligation is $46,800, and as the trial court noted in its finding, this amounts to approximately seventeen percent of Husband's annual income of $280,000. Husband is more than capable of making child support payments of $900 per week. Moreover, a significant disparity exists between Husband and Wife's respective earnings and earning ability. Accordingly, we conclude that the trial court appropriately deviated from the Child Support Guidelines in an attempt to provide the children with the same standard of living they would have had if the marriage had not been dissolved.

## II. Six Percent Rule

▪ Husband next argues that the trial court erred when it calculated Wife's annual financial obligation under the Six Percent Rule. Pursuant to Child Support Guideline 3(H):

The data upon which the Guideline schedules are based include a component for ordinary health care expenses. Ordinary uninsured health care expenses are paid by the parent for whom the parenting time credit is not calculated **up to** six percent (6%) of the basic child support obligation ... and, if applicable, the child support obligation attributed to a student living away from home ... annually since the Guideline Schedules for Weekly Support Payments include six percent (6%) for ordinary uninsured health care costs.... Extraordinary health care expenses are those uninsured expenses which are in excess of six percent (6%) of the basic obligation, and would include uninsured expenses for chronic or long term conditions of a child. Calculation of the apportionment of the health care expense obligation is a matter separate from the determination of the weekly child support obligation.

Child Supp. G. 3(H) (emphasis added).

The trial court ordered Wife to pay "the first $2,206.87 per calendar year" for health care expenses not covered by insurance. Appellant's App. p. 25. Husband contends that "Wife's obligation under the Six Percent Rule is inconsistent with its upward deviation of Husband's weekly child support amount," and due to that deviation, "Wife's obligation should have totaled $3004.34 per year." Br. of Appellant at 28.

Initially, we note the permissive language of the Guideline: "up to six percent (6%)." A trial court may deviate from the Six Percent Rule. *See Naville v. Naville,* 818 N.E.2d 552, 558 (Ind.Ct.App. 2004); Child Supp. G. 3(H). Here, the trial court's well-founded reasons for deviating from a Guideline-limited child support obligation also support the trial court's deviation from the Six Percent

Rule. Therefore, the trial court did not abuse its discretion when it ordered Wife to pay "the first $2,206.87 per calendar year" for uninsured health care expenses.

### III. Counseling Expenses

■ Husband also asserts that the trial court erred when it ordered Husband to be responsible for all of the children's counseling expenses. Husband argues that the counseling expenses should have been included in the Six Percent Rule calculation. In support of his argument, Husband cites to the commentary of Child Support Guideline 3(H), which states, "[a]s a practical matter, it may be wise to spell out with specificity in the order what uninsured expenses are covered and a schedule for the periodic payment of these expenses.... The order may include any reasonable medical, dental, hospital, pharmaceutical and psychological expenses deemed necessary for the health care of the child(ren)."

Once again, we note the Guidelines' use of the permissive language "may include," which leads us to the conclusion that under the Guidelines, the trial court has the discretion to determine whether the children's psychological expenses should be included in the Six Percent Rule. We also reiterate that the Guidelines should not be treated as "immutable, black letter law." *See Garrod,* 655 N.E.2d at 338. In light of the substantial, and likely continuing, disparity in the parties' incomes as well as the evidence concerning the children's counseling expenses presented at the hearing, we conclude that the trial court acted within its discretion when it ordered Husband to pay the children's counseling expenses.

### IV. College Expenses

■ Husband next contends that the trial court erred when it ordered him to pay one hundred percent of the children's college expenses. The trial court issued

the following conclusion of law in its dissolution decree:

> The children's college funds shall be managed by Husband for the benefit of the children pursuant to the section 529 guidelines. Husband shall utilize these college funds to pay college expenses for each child. At such time as each child's college funds are exhausted, Husband shall pay 100% of the balance of any college costs.

Appellant's App. p. 25.

■■■■ " 'Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate.' " *Snow v. Rincker,* 823 N.E.2d 1234, 1237 (Ind.Ct.App.2005), *trans. denied* (quoting *Claypool v. Claypool,* 712 N.E.2d 1104, 1109 (Ind.Ct.App.1999), *trans. denied* ). " 'In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.' " *Id.* at 1238 (quoting *Neudecker v. Neudecker,* 577 N.E.2d 960, 962 (Ind.1991)).

Husband relies on *Carr v. Carr,* 600 N.E.2d 943 (Ind.1992) and *McMaster v. McMaster,* 681 N.E.2d 744 (Ind.Ct.App. 1997) in arguing that the trial court erred when it ordered Husband to pay one hundred percent of the children's college expenses. In *Carr,* Father was ordered to pay "all reasonable and necessary tuition, room and board, fees, books, and supplies" for his daughter's college education. *Carr,* 600 N.E.2d at 944. Mother and Father's adjusted gross incomes were $19,000 and $28,000 respectively and each had a comparable amount of equity in their real estate, but Father had greater savings than Mother. *Id.* at 946. Our supreme court reversed the trial court's order concerning college expenses on appeal and after noting that Mother and Father's resources were not at parity, stated:

> While the statutes and our guidelines do not require apportionment based on precise parity, they do require rough proportionality. It is not possible for us to conclude that the trial court recognized this when it apportioned in excess of 80% of Jody's educational costs ($5,623 of the $6,960) to her father.

*Id.*

In *McMaster,* Father was also ordered to pay his daughter's entire college expenses, including tuition, room and board, books, fees, and miscellaneous expenses. 681 N.E.2d at 746. Citing *Carr,* Father argued on appeal that the trial court erred when it ordered him to pay all of his daughter's college expenses. *Id.* Father's income was approximately $42,000 and Mother's was approximately $38,000. *Id.* Also, Father had significant assets from an inheritance and Mother had "available financial resources in excess of $90,000." *Id.* at 747. Noting that income alone is not the determining factor when apportioning the cost of college expenses, our court stated:

> Here, the trial court made no determination, nor does the record show why Mother cannot use a portion of her resources to contribute to Joelle's college education. In her brief, Mother suggests the trial court ordered Father to pay the full educational expenses because Father is financially able to do so. While Mother's argument may justify an order requiring her to make a modest contribution to Joelle's college expenses consistent with her financial ability, it does not justify an order requiring Father to pay all of the expenses.

*Id.*

Unlike the facts presented in both *Carr* and *McMaster,* in this case, there is a vast

disparity between the incomes of Husband and Wife. Husband's current annual income is $280,000, and the trial court imputed annual income to Wife in the amount of $20,800. Moreover, because Wife earned little or no income after their first child was born, and had the parties remained married, Husband would have been the sole contributor to the children's college education expenses. Accordingly, we conclude that the trial court did not abuse its discretion when it ordered Husband to pay 100% of the children's college expenses.[2]

## V. Dependent Tax Exemptions

 Husband also argues that the trial court erred when it refused to order Wife to release to Husband the dependent state and federal tax exemptions for the children. Generally, the custodial parent automatically receives the dependent tax exemptions for the minor children; however, the custodial parent may execute a written waiver of the exemption for a particular tax year. *Sims v. Sims*, 770 N.E.2d 860, 866 (Ind.Ct.App.2002).

Child Support Guideline 6 addresses income tax exemptions and states in pertinent part:

Development of these Guidelines did not take into consideration the awarding of the income tax exemption. Instead, it is recommended that each case be reviewed on an individual basis and that a decision be made in the context of each case. Judges and practitioners should be aware that under current law the court cannot award an exemption to a parent, but the court may order a parent to release or sign over the exemption for one or more of the children to the other parent pursuant to I.R.C. s 152(e). . . . Judges may wish to consider ordering the release to be executed on an annual basis, contingent upon support being current at the end of the calendar year for which the exemption is ordered as an additional incentive to keep support payments current.

In determining when to order a release of exemptions, it is recommended that at minimum the following factors be considered:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

---

2. Judge Baker's concern about Husband's obligation to pay "an unfettered amount of the children's college expenses" under this order does not withstand careful examination. While the figures cited for the annual cost at Harvard University are indeed factual, they are illustrative only of a most extreme and remote possibility. Applicants for Harvard's class of 2009 numbered 22,796, but of those applicants only 2,074 were admitted. Of those who enrolled, two-thirds received some form of financial aid, a proportion that has remained large and relatively constant, at least since the time of the Class of 1976, in order to make the extraordinary benefits of a Harvard education accessible to anyone who qualifies for admission.

In fact, however, three out of four college applicants attend state colleges where annual expenses are much less. The costs to attend Indiana University, Purdue University and Ball State University for the 2005–2006 academic year are $12,256, $13,288, and $13,162, respectively, and are much more likely to be an accurate range of the "unfettered" amounts Husband will pay from a current annual income of $280,000. Moreover, Husband may seek a modification of the trial court's order concerning college expenses if his income decreases substantially in the future.

(5) the financial burden assumed by each parent under the property settlement in the case.

Child Supp. G. 6.

■■■■ "Taking into account those factors, a 'trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of child support available for the child.'" *Sims*, 770 N.E.2d at 867 (quoting *Lamon v. Lamon*, 611 N.E.2d 154, 159 (Ind.Ct.App.1993)). The noncustodial parent must demonstrate the tax consequences to each parent as a result of transferring the exemption and how such transfer would benefit the children. *Id.*

In his brief, Husband contends that he "may be able to enjoy a favorable tax benefit if allowed to claim the children as dependents, even though his present income exceeds Wife's income." Br. of Appellant at 33. Husband also asserts the trial court should have ordered Wife to transfer the exemption to him because of his "contribution to the Children's support, the apportionment of nearly all of the parties' debt to Husband in the final property settlement and the young ages of the parties' Children[.]" *Id.* However, Husband fails to specifically demonstrate the tax consequences to the parties if the exemption were transferred and, most importantly, how such transfer would benefit the children.[3] Accordingly, we conclude that the trial court did not abuse its discretion when it concluded, "Wife shall be entitled to claim the three children as exemptions for state and federal income tax reporting purposes." Appellant's App. p. 25.

## VI. Return of Wife's Personal Property

■■ Finally, Husband contends that the trial court erred when it ordered him to return items of personal property to Wife despite his testimony that such property was not in his possession. The trial court issued the following findings with regard to Wife's personal property:

48. During the pendency of these proceedings, the parties divided up certain personal property. However, when Wife vacated the marital home on or about June 17, 2003, she left a variety of items at the marital home. Husband did not take possession of any of these items left in the marital home and the Court finds that those items of personal property left by the parties are deemed to have been abandoned by the parties and have no value.

49. Wife is seeking return of the following personal property from Husband: All of Wife's summer clothes All of Mary Hoyt's [s]ummer [c]lothes Wife's jewelry, including 3 Tiffany bracelets, Tiffany earrings, and Tiffany necklace Elliptical workout machine All seasonal decorations All children's toys Handmade art work Wife's Prince tennis racket All Wife's personal identification documents, including Social Security card,

---

3. In 2005, the dependent tax exemption is $3200 per child, therefore, in this case, Wife may deduct $9600 from her adjusted gross income to arrive at her taxable income. In his dissent, Judge Baker suggests that the dependent tax exemption "is worth significantly more to someone who earns $280,000 per year than to someone who earns $20,800 per year." Op. at 182. While it is true that Husband would likely receive a greater tax benefit in actual dollars if he were permitted to claim the exemption, the reduction in Wife's taxable income will result in a greater tax benefit as a percentage of her actual income. In any event, because Husband failed to show how a transfer of the exemption to him would benefit the children, we cannot conclude that the trial court abused its discretion when it refused to transfer the exemptions.

passport, birth certificate, and college transcripts.

The children's documents, including birth certificates, Social Security cards, and shot records.

Appellant's App. pp. 17–18. The trial court then concluded: "Husband shall retain ownership of the personal property currently in his possession with the exception of those items listed in paragraph 49 above. Wife shall have those items listed in paragraph 49 above set over to her and Husband shall have no further interest therein." *Id.* at 26.

At the hearing, Husband testified that after Wife moved out of the marital residence, she left many personal items. Tr. p. 278. After both Husband and Wife had moved out of the marital residence, the realtor, who listed the real estate, arranged for all property that was left in the home to be removed. Tr. p. 279. Although Wife asserted that Husband took the property listed in Finding Number 49, *see* Tr. p. 73, Wife presented no other evidence tending to establish that Husband has retained possession of those items. Accordingly, we conclude that the trial court's order that Husband return the items in Finding Number 49 to Wife is not supported by the evidence and is in conflict with the trial court's finding that Wife abandoned certain personal property when she vacated the marital residence.

### Conclusion

The trial court did not abuse its discretion when it 1) calculated Husband's income, 2) deviated from the Child Support Guidelines with regard child support, parenting time, and the Six Percent Rule, 3) ordered Husband to pay one hundred percent of the children's counseling and college expenses, and 4) allowed Mother to

retain the dependent tax exemptions. However, the trial court erred when it ordered Husband to return to Wife the personal property listed in Finding Number 49, which Wife had previously abandoned.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

RILEY, J., concurs.

BAKER, J., concurs in part and dissents in part with opinion.

BAKER, Judge, concurring in part and dissenting in part.

I concur with the majority opinion as to parts I, II, and III. But I must dissent from the majority's determinations that the trial court properly ordered Husband to pay an unfettered amount of the children's college expenses, that Husband is not entitled to the dependent tax exemptions, and that the trial court's order that Husband return Wife's property is not supported by the evidence.

### I. College Expenses

The commentary to Ind. Child Support Guideline 6 addresses educational support and provided the following at the time of Husband's petition and the hearing:[4]

> Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and *should be limited to reasonable and necessary expenses* for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.

\* \* \* \* \* \*

---

4. The commentary to Ind. Child Support Guideline 6 was amended on Sept. 10, 2003, effective Jan. 1, 2004. No substantive changes were made to the relevant portions of the commentary.

b. Post–Secondary Education. The authority of the Court to award post-secondary educational expenses is derived from IC 31–16–6–2. It is discretionary with the court to award post-secondary educational expenses and in what amount. *In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.*

If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assistance should be credited to the child's share of the educational expense.

\* \* \* \* \* \*

The court may limit consideration of college expenses to the cost of state supported colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school.

Child Supp. G. 6, commentary (emphasis added). Thus, the Guidelines make it clear that educational expenses are to be a collaborative effort on the part of the child and both parents. Based on the clear wording of the Commentary, the mere fact that Husband earns more money than Wife—no matter how great the disparity—does not relieve her and the children of their responsibility to contribute toward the education of the children. *See McMaster v. McMaster,* 681 N.E.2d 744, 747 (Ind.Ct.App.1997) (finding that ten percent difference of income supports a "modest contribution" by Mother to child's college expenses rather than requiring Father to pay all of the expenses).

Furthermore, it seems to me to be beyond what is reasonable and necessary to require Husband to pay any amount that the children may incur in their education. As a panel of this court recently noted in *Snow v. Rincker,* 823 N.E.2d 1234 (Ind.Ct. App.2005), *trans. denied,* a trial court may not plunge a parent into poverty with an order for higher education expenses. By placing no limitations on the amount that Husband is responsible for with regard to his children's higher education expenses, it is entirely possible that he too could be plunged into poverty, in spite of his relatively high income. For example, the cost of attendance at Harvard for the 2005–2006 academic year is between $44,350 and $46,750. *See Harvard College Financial Aid Office* at http://www.fao. fas.harvard .edu/cost.htm (last visited October 11, 2005). If this cost remains static, putting three children through four years of education at Harvard would cost Husband $561,000—twice Husband's current annual income. The situation only worsens if any of the children attend graduate school. Thus, the lack of limitations on the order for Husband to pay 100% of the college expenses appears to me to be unreasonable. I would therefore reverse on this basis.

## II. Dependent Tax Exemption

As the majority stated, the Child Support Guidelines recommend that when determining who is to be given the dependent tax exemption, the trial court should consider at least these five factors:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case.

The majority essentially finds that the trial court properly awarded the exemption to Wife because Husband did not provide us with a calculation and precise outcome as to the first factor. But it is apparent to me that this tax exemption is worth significantly more to someone who earns $280,000 per year than to someone who earns $20,800 per year. By giving the exemption to Husband, the trial court would have made more funds available to him with which he could support his children. The exemption will be available for many years to come, as the youngest child is currently eight years old. Furthermore, Husband bears a significant percentage of the cost of supporting the children as well as a significant portion of the marital debt. As such, I would find that it was improper for the trial court to award the dependent tax exemption to Wife.

### III. Wife's Personal Property

As to the issue of the return of Wife's personal property, I believe that it is possible to read Paragraphs 48 and 49 in harmony. Paragraph 48 describes the common scenario in a divorce—one spouse leaves the house without taking all of her personal belongings with her immediately. The remaining spouse does not necessarily take possession of that property by virtue of the other spouse leaving. As such, it is neither person's property. But in this case, Husband is to give to Wife certain items of personal property that she left behind if he possesses them. If he no longer possesses them, he cannot be held

in contempt because he did not divest himself of property that rightfully belonged to Wife before the issuance of this order. The property no longer belonged to anyone, but the trial court ordered it to be given to Wife if it still exists. Based on this reading of the trial court's order, I would affirm on this issue.