


ATTORNEY FOR APPELLANT

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Jane G. Cotton
Anderson, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

R.B.,

*Appellant-Petitioner,*

v.

K.S.,

*Appellee-Respondent*

February 3, 2015

Court of Appeals Cause No. 48A05-1406-DR-275

Appeal from the Madison Circuit Court.
The Honorable G. George Pancol, Judge.
Cause No. 48C02-0506-DR-478

**Baker, Judge.**

[1] R.B. (Father) appeals the order of the trial court granting him legal custody of his children and ordering that parenting time be equally shared with K.S. (Mother). The order further specified that Father is to pay to Mother child support in the amount of $876 per week. Father argues that this award is clearly erroneous. Finding that the amount of child support was determined in accordance with the Indiana Child Support Guidelines and finding no other error, we affirm.

# Facts

[2] Father and Mother have two children who were born in 2001 and 2003. The couple divorced in 2006 and agreed to share legal and physical custody of the children. This agreement was accepted by the trial court in a dissolution decree issued on February 14, 2006. The arrangement worked until 2013, when Mother became concerned that so much of the children's time was being taken up by activities that Father had them participating in. The children were so busy with baseball and basketball that Mother did not feel she had adequate time to spend with them. Mother wrote to Father asking him to limit the children's activities. Father did not negotiate with Mother and, on June 26, 2013, he filed a petition to modify, asking the trial court to grant him full legal and physical custody of the children. On July 8, 2013, Mother filed a counter petition, asking the trial court to grant her full legal and physical custody of the children.

[3] On March 31, 2014, following a hearing on the matter, the trial court issued an order stating: "The Court finds that the Father will have custody of the parties' minor children with the physical custody to be shared by the parties as has previously been done through the end of the school year." Appellant's App. p. 12. The trial court also ordered that Father pay Mother child support in the amount of $876 per week. This support order was to be retroactive to the date Mother filed her petition. Father now appeals. The trial court has stayed the enforcement of the child support award pending the outcome of this appeal.

# Discussion and Decision

## I. The Trial Court's Order

[4] Initially, Father disputes the meaning of the trial court's statement that "Father will have custody of the parties' minor children with the physical custody to be shared by the parties as has previously been done . . . ." *Id.* Father argues that the trial court intended to grant him "full custody," both legal and physical. Appellant's Br. p. 11.

[5] Father attempts to support this claim by pointing to a statement made by the trial court at hearing that he believes differed from the final order. However, the statement that Father points to is nearly identical to the language of the order. At hearing, the trial court stated: ". . . I am going to say today that full custody of the children be placed with the Father *but at this point I am not going to change the physical custody arrangement* . . . ." Appellant's Br. p. 11 (emphasis

added). The parents' prior physical custody arrangement gave each parent an approximately equal share of parenting time. Appellant's App. p. 18.

[6] Father argues that the trial court's use of the phrase "full custody" in the first clause of the sentence "entail[s] both legal and physical custody." Appellant's Br. p. 12. However, if Father means to assert that the trial court intended to alter the prior parenting time arrangement, he is simply ignoring the second clause of the sentence.

[7] The relevant statutes as well as the Indiana Child Support Guidelines anticipate that the trial court is to determine the legal custody of the children and then make an allocation of parenting time. This is precisely what the trial court did. Its order, as well as its statements at hearing, make clear that Father is to have legal custody and both parents are to have an equal share of parenting time. The order needs no clarification.

## II. Child Support Award and *Grant v. Hager*

[8] Father next takes issue with the trial court's award of child support. Reversal of a trial court's child support order is merited only where the award is clearly erroneous, meaning that the determination is clearly against the logic and effect of the facts and circumstances before the court. *In re Paternity of Jo.J.*, 992 N.E.2d 760, 766 (Ind. Ct. App. 2013).

[9] The trial court used a child support worksheet submitted by Mother to calculate child support.[1] The worksheet showed a great disparity between the parents' weekly incomes. Mother's share amounted to only 2.6% of the parents' total weekly income. This percentage was applied to the parents' total child support obligation to determine Mother's share of child support, which came to $43.94 per week. Mother would ordinarily have paid this amount to Father. But because she was to have the children for 181 to 183 days out of the year, she received a parenting time credit of $1,019.48 per week. The parenting time credit thus exceeded Mother's weekly child support obligation by $975.54, meaning that Father would now pay weekly child support to Mother. The trial court reduced the award to $876 per week in recognition of the fact that Father was "ordered to pay all extracurricular activities for the children, school expenses, and all medical, dental, and optical expenses that are not covered by insurance." Appellant's App. p. 12.

[10] Father observes that this is a situation in which child support is flowing from a custodial parent to a non-custodial parent. In 2007, our Supreme Court interpreted a previous version of the Indiana Child Support Guidelines and concluded that the Guidelines did not allow for child support to flow from a custodial to a non-custodial parent unless the trial court found that it would be unjust to do otherwise and made a written finding to that effect in its order.

---

[1] Father did not submit a worksheet, nor does he dispute the accuracy of the figures or calculations that appear on Mother's worksheet.

*Grant v. Hager*, 868 N.E.2d 801, 803-04 (Ind. 2007). Thus, if the trial court ordered a custodial parent to pay child support to a non-custodial parent, this was considered a deviation from the Guidelines requiring explanation pursuant to Indiana Child Support Rule 3.[2] Here, because the child support flows from the custodial to the non-custodial parent, Father argues that the trial court was required to make a written finding that it would be unjust to order otherwise.

[11] However, in 2010, following its decision in *Grant*, our Supreme Court adopted amended Guidelines. The 2010 amendments to the Guidelines make clear that trial courts no longer need to offer an explanation before ordering custodial parents to pay child support to non-custodial parents. The 2010 amendments added the following sentence to Guideline 1: "Absent grounds for deviation, the custodial parent should be required to make monetary payments of child support, if application of the parenting time credit would so require." A sentence added to Guideline 3F is even more straightforward:

> When there is near equal parenting time, and the custodial parent has significantly higher income than the non-custodial parent, application of the parenting time credit should result in an order for the child support to be paid from a custodial parent to a non-custodial parent, absent grounds for a deviation.

[12] Therefore, an order of child support from a custodial to a non-custodial parent is no longer considered a deviation requiring explanation and *Grant's*

---

[2] "When the court deviates from the Guideline amount, the order or decree should also include the reason or reasons for deviation." Child Supp. R. 3.

requirement that the trial court make a written finding explaining such a result no longer holds.

## III. Amount of Child Support Award

[13] Father next argues that the amount of child support awarded by the trial court is excessive. The trial court determined the amount of child support through application of the Guidelines and, therefore, there is a rebuttable presumption that this is the correct amount. Child Supp. Rule 2. Father does not argue that the trial court erred in its application of the Guidelines, only that the resulting award is "unjust and clearly erroneous." Appellant's Br. p. 6.

[14] The Guidelines are designed to help trial courts fashion child support awards that provide children, as closely as possible, with the same standard of living they would have enjoyed had the marriage not been dissolved. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006). Here, the children were accustomed to a very high standard of living. The child support worksheet utilized by the trial court listed Father's weekly income as $15,000. Appellant's App. p. 13. Father does not dispute the accuracy of this amount.

[15] Instead, Father asserts that Mother could not possibly need the amount of money that she has been awarded. In support of his argument, Father cites *Bussert v. Bussert*, in which this Court held that an award of child support which leveraged a mother's standard of living at the expense of a father's standard of living was contrary to public policy. 677 N.E.2d 68, 71 (Ind. Ct. App. 1997). However, in *Bussert*, the Court was careful to note that the amount of support

awarded was higher than the guideline amount. *Id.* In this case, the amount of support awarded is lower than the guideline amount. Furthermore, Father does not argue that his standard of living will decline as a result of the award. Appellant's Br. p. 8.

[16] Father also attempts to show that the award is excessive by making reference to various categories of expenses that the Guidelines consider in order to help explain the development of the parenting time credit formula. Father focuses on two types of expenses—transferred expenses (food and transportation) and duplicated fixed expenses (housing)—which the guidelines expect a parent in Mother's situation to incur. Father claims that Mother could not need as much money as she has been awarded to cover these expenses.

[17] First, we note that the Guidelines explicitly state that these categories are not relevant to litigation. Ind. Child Support Guideline 6. They are intended only to explain the general types of expenses the parenting time credit formula seeks to account for. *Id.* Second, Father supports his argument with figures regarding the value of Mother's residence that were not made part of the record before the trial court. Appellant's Br. p. 8. We reiterate that, on appeal, we consider whether the trial court's determination is clearly against the logic and effect of the facts and circumstances that were before the court. *In re Paternity of Jo.J.*,

992 N.E.2d at 766. We decline to base our judgment on figures that Father failed to bring to the trial court's attention.[3]

[18] Not only was the award calculated pursuant to the Guidelines, but it is, in fact, lower than the amount called for by the Guidelines. The amount is by no means unheard of. In *Eppler v. Eppler*, this Court affirmed a child support award of $900 per week even though this award was $275 *higher* than the amount called for by the Guidelines. 837 N.E.2d 167, 175 (Ind. Ct. App. 2005). The Court found that the award amounted to approximately seventeen percent of Eppler's annual income. *Id.* The award at issue in this case amounts to less than six percent of Father's weekly income.[4] Under these circumstances, the trial court was well within its discretion to award $876 per week in child support to Mother.[5]

---

[3] It is also unclear how Father arrived at some of the figures he presents in his brief. For example, speaking of Mother's current residence, Father states: "The property is assessed at $146,200. Although it is a nice residence the fixed expenses for it could not be over $88,000 a year which is what they would have to be to avoid the child support being a windfall." Appellant's Br. p. 8. Father fails to explain how he arrived at this $88,000 figure or how he defines "windfall." As such, even if our standard of review permitted us to consider this information, we can't make heads or tails of it.

[4] This was calculated by dividing Father's child support obligation of $876 per week by his income of $15,000 per week.

[5] Father also argues that the trial court erred in making the award retroactive to July 8, 2013, as Mother had only had the children roughly 38% of the time from January 1, 2013, to September 30, 2013 and the award gives Mother a parenting time credit for a full half of the year. However, as the record does not indicate the breakdown of days for the period between July 8, 2013, and September 30, 2013, nor does it include data for the remainder of 2013, we cannot determine whether the trial court's decision to award retroactive support for that period was clearly erroneous.

## IV. Attorney Fees

[19] Finally, Mother requests appellate attorney fees pursuant to Indiana Appellate Rule 66(E), which provides: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." While we have decided against Father, we do not believe that this appeal was frivolous or in bad faith. In particular, this Court had yet to address the relevance of *Grant v. Hager* subsequent to the 2010 amendments to the Guidelines. Consequently, we decline to order Father to pay Mother's appellate attorney fees.

[20] The judgment of the trial court is affirmed and the parties are directed to proceed pursuant to the trial court's order.

Vaidik, C.J., and Riley, J., concur.