IN RE PATERNITY OF J.M.G.,
ASHLEY M. BIXLER, Appellant-Respondent,
v.
JEREMY RYAN GRIFFIN, Appellee-Petitioner.
No. 54A04-0607-JV-365
Court of Appeals of Indiana.
December 5, 2006.
IAN A.T. McLEAN, Crawfordsville, Indiana, ATTORNEY FOR APPELLANT.
ROBERT N. REIMONDO, Capper, Tulley & Reimondo, Crawfordsville, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM OPINION
BAKER, Judge.
Appellant-respondent Ashley M. Bixler appeals the trial court's grant of custody to appellee-petitioner Jeremy Ryan Griffin as to their minor daughter, J.M.G. Specifically, Bixler argues that the trial court abused its discretion because its decision to grant Griffin sole custody of J.M.G. was not in the best interests of the child. Finding no error, we affirm the judgment of the trial court.

FACTS
In December 2003, Griffin met Bixler while he was in Crawfordsville on leave from the United States Army. Twenty-one-year-old Griffin and sixteen-year-old Bixler immediately began a sexual relationship. Bixler became pregnant, and she gave birth to J.M.G. on June 20, 2005, while Griffin was deployed in Iraq. On June 27, 2005, Griffin returned to Indiana for a one-month leave and visited his one-week-old daughter, who was living in Crawfordsville with her maternal grandmother, Laura Chadwick. At that time, Bixler was living with her sister in Crawfordsville. Griffin had five overnight visits with J.M.G. during his month of leave, and he met with an attorney to discuss a paternity action before he reported to Fort Riley, Kansas, on July 27, 2005. Griffin was living in the single-solider barracks at Fort Riley and, therefore, could not take J.M.G to live with him at that time.
On September 7, 2005, Griffin filed a verified petition to establish paternity, custody, and parenting time. On October 17, 2005, the State filed a counter petition on behalf of Bixler to establish paternity, provide for support, and petition for repayment of public assistance. On October 19, 2005, Griffin and Bixler stipulated that Chadwick should have temporary custody of J.M.G. On November 15, 2005, eighteen-year-old Bixler married thirty-five-year-old Ronald Benassi. On December 21, 2005, Griffin married Amber Griffin (Amber) and they moved off base into housing near Fort Riley where children may also live. The trial court held a hearing on March 7, 2006, and awarded sole custody of J.M.G. to Griffin, subject to monthly visitations by Bixler. Bixler now appeals.

DISCUSSION AND DECISION
Bixler argues that the trial court abused its discretion when it granted custody of J.M.G. to Griffin. Specifically, Bixler argues that because the evidence established that her extended family lives in Crawfordsville, has formed relationships with J.M.G, and can provide added support that J.M.G. will not have in Kansas, the custody order must be set aside.
Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion. Clark v. Clark, 726 N.E.2d 854, 856 (Ind. Ct. App. 2000). Reversal is appropriate only if we determine that the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences that can be drawn therefrom. Id.
In making a custody determination, the trial court's primary consideration is the best interests of the child. Naggatz v. Beckwith, 809 N.E.2d 899, 902 (Ind. Ct. App. 2004), trans. denied. Indiana Code section 31-14-13-2 provides:
In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
(A) the child's parents;
(B) the child's siblings; and
(C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.
Bixler argues that the trial court abused its discretion when it granted custody of J.M.G. to Griffin because Bixler's extended family lives in Crawfordsville and can provide additional support that J.M.G will not have with Griffin in Kansas. Specifically, Bixler directs us to Indiana Code sections 31-14-13-2(4) and -2(5) and argues that the trial court was statutorily required to consider Bixler's extended family and that it would have granted Bixler custody if it had properly considered these factors. When it made its custody determination, the trial court commented:
The court certainly recognizes the importance of extended family. The importance of grandparents and friends and other relatives, but when looking at where a child should be placed, with which parent a child should be placed, the court has to look at the home of that parent, pretty much as it stands on it's [sic] own two feet as it were and both Mr. Griffin and Ms. Bixler were recently married. Both of those relationships are not tested over time and so the questions are still there concerning the strength and health of those relationships. The court however believes that the most important thing in looking at a home for a child is the level of stability and security that that home can provide and it's the court's estimation in comparing Ms. Bixler's or Mrs. Benassi's home and Mr. Griffin's home that Mr. Griffin's home can provide the most for the child in terms of stability and security.
Tr. p. 264 (emphases added). It is apparent to us that the trial court did recognize the "importance of extended family" and that it did not completely disregard that factor when it made its custody determination. Id. Instead, it appears that the trial court determined that Bixler's limited extended familyChadwick and Bixler's sisterwas not a significant factor in this custody determination and that the importance of each party's home on its "own two feet" was more important given the circumstances. Id. We cannot say that the trial court erred in making this determination.
Here, Griffin presented ample evidence to the trial court to support its decision. Griffin contacted Bixler and immediately visited his one-week-old daughter when he was in Crawfordsville on military leave. Shortly thereafter, he filed a petition to establish paternity, custody, and parenting time with J.M.G. Griffin not only has stable employment but also earns a salary sufficient to support J.M.G., his wife Amber, and Amber's two children. Id. at 88; Petitioner's Ex. 11. Furthermore, Amber does not have a criminal history or use drugs or alcohol. Tr. p. 9.
In contrast, after J.M.G. was born, Bixler decided to live with her sister and had J.M.G. stay with Chadwick because Bixler "didn't feel like she could be a good mother." Id. at 186. Although Bixler was living near Chadwick and J.M.G., she consented to Chadwick's temporary custody of J.M.G. Id. at 243; Appellant's App. p. 9-10. Bixler is unemployed, suffers from depression, and never cares for J.M.G. for more than a few days at a time. Tr. p. 137, 199. In addition, Bixler married a man who also suffers from depression and has a criminal record that includes convictions for felony burglary and two counts of misdemeanor criminal mischief. Id. at 170, 181-82.
Essentially, Bixler is inviting us to reweigh the evidence that was presented at trial an invitation that we decline. Based on the evidence presented, we cannot say that the trial court abused its discretion when it granted Griffin sole custody of J.M.G.
The judgment of the trial court is affirmed.
ROBB, J., and BARNES, J., concur.