**Ted Allen SIMS, Appellant–Petitioner,**

v.

**Elizabeth A. SIMS, Appellee–Respondent.**

No. 49A02–0109–CV–588.

Court of Appeals of Indiana.

June 21, 2002.

---

I. Marshall Pinkus, Pinkus & Pinkus, Indianapolis, IN, Attorney for Appellant.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge. ·

Appellant-petitioner Ted Allen Sims appeals the trial court's modification of a child support order in favor of appellee-respondent Elizabeth A. Sims. We reverse in part and remand for: (1) entry of brief written findings, in light of the Indiana Child Support Guidelines, to explain the order requiring Ted to pay extraordinary educational expenses for his children's private elementary education; and (2) recal-

culation of Ted's child support in accordance with suggestions found in the Guidelines for including commission income. We also hold that there was no error in allowing Elizabeth to retain her dependency tax exemptions or in awarding her partial attorney fees.

## FACTS

The facts most favorable to the judgment are that Ted and Elizabeth married in 1990. They have two daughters: E.A., born in 1991, and K.A., born in 1994. Ted filed a petition for divorce in 1997 and eventually entered into a settlement agreement with Elizabeth.

The settlement agreement professed to make "proper provisions for the support, maintenance, medical care, custody and education of their minor child." Appellant's App. p. 40. As for support of the two children, Ted would pay $152.00 per week based on a then-annual income of $30,000. The settlement agreement also reduced to writing the parties' responsibilities for the children's education:

> The Wife intends to enroll the parties' minor children at Our Lady of Lourdes and the Husband has no objection to by [sic] the children's attendance at said school. The Wife will be responsible for the payment of the registration fee, the annual tuition, books, and uniforms until further order of this court.

Appellant's App. p. 44.

Elizabeth filed a petition for modification in 2000. She requested an increase in child support, Ted's contribution to the children's education expenses at Our Lady of the Lourdes, and reasonable attorney fees. Ted, on the other hand, informally requested that the trial court order Elizabeth to waive her tax exemptions on the two children for three years, so that he could apply the exemptions on his returns. Tr. p. 166. After hearing testimony on the

petition for modification, the trial court ordered Ted to increase his support to $254.74 per week. Ted was also ordered to pay half of E.A.'s and K.A.'s private school expenses and pay $1600 in Elizabeth's attorney fees. The trial court made no ruling about Ted's tax exemptions, so we will assume his request was denied. Ted now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Modification of a child support order requires a showing of "changed circumstances so substantial and continuing as to make the terms unreasonable." Ind. Code § 31–16–8–1(1); see also Ind. Child Support Guideline 4 ("The provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances."). Modification of a child support order " 'involves a factual determination that substantial and continuing, changed circumstances render existing terms unreasonable.' " Glass v. Oeder, 716 N.E.2d 413, 416 (Ind.1999) (quoting Giselbach v. Giselbach, 481 N.E.2d 131, 133 (Ind.Ct.App.1985)). The standard of review to determine whether a trial court has abused its discretion in modifying a support order is well settled. Meehan v. Meehan, 425 N.E.2d 157, 161 (Ind.1981). We do not weigh the evidence or judge the credibility of witnesses, but rather consider only that evidence most favorable to the judgment, together with the reasonable inferences that can be drawn therefrom. Id.

Neither party requested findings of fact, as permitted by Ind. Trial Rule 52, nor did the trial court enter findings sua sponte. Thus, Ted appeals from a general judgment. We will affirm a general judgment if it can be sustained on any legal theory consistent with the evidence, and

we will presume the trial court followed the law. *Cutshall v. Barker*, 733 N.E.2d 973, 982 (Ind.Ct.App.2000).

## II. Ted's Claims

### A. Extraordinary Educational Expenses

■ Ted contends that the Indiana Child Support Guidelines preclude award of extraordinary education expenses. In general, extraordinary educational expenses may be added to the basic child support obligation. Ind. Child Support Guideline 3(E)(4) (referring to Ind. Child Support Guideline 6 for treatment of the issue). According to the Guidelines:

Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.

a. Elementary and Secondary Education. If the expenses are related to elementary or secondary education, the court may want to consider whether the expense is the result of a personal preference of one parent or whether both parents concur; if the parties would have incurred the expense while the family was intact; and whether or not education of the same or higher quality is available at less cost.

Ind. Child Support Guideline 6, cmt. ("Extraordinary Educational Expenses").

■ There is a rebuttable presumption that an award of child support based on application of the Guidelines is the correct amount. Ind. Child Support Rule 2. If a court concludes that a particular amount reached by application of the Guidelines would be unjust, then it must "enter a written finding articulating the factual cir-cumstances supporting that conclusion." Ind. Child Support Rule 3. In circumstances such as the ones presented here, when extraordinary educational expenses are ordered separately from child support, principles of the Indiana Child Support Guidelines still apply with the same force. *Carr v. Carr*, 600 N.E.2d 943, 946 n. 3 (Ind.1992). Thus, in awarding any amount of extraordinary educational expenses, a trial court's "discretion is to be exercised in a way consistent with the Guidelines." *Id.*

Here, the evidence indicated that E.A.'s and K.A.'s enrollment in parochial school is a result of Elizabeth's preference and that enrollment took place after the parties had separated. Tr. p. 86. The evidence also showed that Elizabeth had not considered other potentially less expensive educational opportunities of the same or higher quality. She testified that she chooses to enroll E.A. and K.A. at Our Lady of Lourdes, Tr. p. 89, despite never investigating the public school in her district or other private schools. Tr. p. 88, 89. Given this unrebutted evidence, application of the Guidelines would have militated against an award of extraordinary educational fees. *See* Child Supp. G. 6, cmt. ("Extraordinary Educational Expenses"). For this reason, the trial court was required to enter written findings detailing the circumstances making application of the Guidelines unjust. *See* Child Supp. R. 3. Therefore, we remand this cause to the trial court for entry of findings showing why application of the Guidelines would be unjust in the instant case.

### B. Calculation of Gross Income

■ Ted acknowledges that his weekly child support payments should be increased in light of his significant salary increases following the divorce decree. However, he disputes the method used by the trial court to incorporate quarterly

commissions within his weekly income. He also contends that the trial court failed to take into account evidence that he had not received commission income during the first five months of 2001—the only evidence of that year's income available at the time of the hearing.

■ "For the purposes of determining the parents' income in the child support calculation, the definition of 'weekly gross income' is broadly defined to include not only actual income from employment, but also potential income and imputed income from 'in-kind' benefits." *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct. App.2000). "A trial court is vested with broad discretion in imputing income to a child support obligor in order to ensure that the obligor does not evade the obligation." *Lloyd v. Lloyd*, 755 N.E.2d 1165, 1169 (Ind.Ct.App.2001). The Commentary to the Indiana Child Support Guidelines cautions courts to carefully examine the circumstances before accepting a "snapshot" verification of the obligor's income:

> One pay stub standing alone can be very misleading, as can other forms of documentation. This is particularly true for salesmen, professionals and others who receive commissions or bonuses, or others who have the ability to defer payments, thereby distorting the true picture of their income in the short term. When in doubt, it is suggested that income tax returns for the last two or three years be reviewed.

Ind. Child Support Guideline 3(B), cmt. 2.

The Guidelines recognize that determining income is more difficult when commissions and other forms of irregular income are involved. Ind. Child Support Guideline 3(A), cmt. 2(b). When irregular income is at issue, there is unavoidable tension between the twin goals of a child support determination: (1) giving children the support they need (2) based on ascertainable, dependable income. Resolving the tension is not a simple task:

> There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.
>
> Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

Ind. Child Support Guideline 3(A), cmt. 2(b). The Guidelines also urge judges and practitioners to be "innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where reasons justify them." *Id.*

The evidence indicates that in 1997 Ted's initial child support obligation was calculated on earnings of $28,600. Ted earned $44,000 in 1998, $53,336 in 1999, and $66,611.00 in 2000. His earnings from 1999 and 2000 comprised base income and commissions as a salesman for a machine repair company. In 1999, Ted earned $39,300 in base salary and $15,000 in commissions. In 2000, Ted earned $44,200 in

base salary and approximately $22,000 in commission income. Undisputed evidence showed that Ted's 2001 base salary would be the same as his 2000 salary—$44,200. Ex. 5. The record also indicated that by the first week of June, Ted had earned $24,550. However, $4,800 of that amount was commission income paid on January 15, 2001, for work performed during the final quarter of 2000. Ted received no commission for work performed during the first quarter of 2001.

It was uncontroverted that Ted had no control over the distribution of his commission payments—Ted's employer pays commissions on a quarterly basis. Tr. p. 129, 134. It was also uncontroverted that Ted's employer was sensitive to downturns in the economy and that there was a "considerable decrease" in the company's sales for the first quarter of 2001. Exhibit 6. On account of this "considerable decrease" in sales, Ted received no commission for the first quarter of 2001. Exhibit 6. Ted had received commissions for the first quarters of 1999 and 2000. Furthermore, it was undisputed that other companies performing the same type of work as his employer were experiencing "considerably" decreased sales during the first quarter of 2001. Tr. p. 136. Finally, there was no suggestion that Ted could somehow manipulate the payment of the commission income so that he would receive its benefit in the guise of some other form of compensation.

The Guidelines suggest that one equitable method of treating irregular income is to require the obligor to pay a fixed percentage of commissions "in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, and quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation." Child

Supp. G. 3(A), cmt. 2(b). Given the undisputed evidence of an economic downturn, undisputed evidence of Ted's inability to manipulate his commission payments, and undisputed evidence that Ted had not earned a commission for the first quarter of 2001, the equitable method suggested by the Guidelines is appropriate. As we remand this cause for entry of findings on the issue of education expenses, we also remand for recalculation of Ted's child support obligation. The trial court should begin with Ted's base salary and add a certain percentage of periodic commissions, if any, as suggested by the Guidelines.

### C. Tax Exemptions

█ Ted next contends that the trial court erred in failing to award him dependency exemptions for E.A. and K.A. for the next three tax years. In addressing Ted's claim, we note that 26 U.S.C. § 152(e) (2000) automatically grants a dependency exemption to a custodial parent of a minor child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. In *Ritchey v. Ritchey*, we held that a trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. 556 N.E.2d 1376, 1379 (Ind.Ct.App. 1990). Commentary to the Guidelines state that the Guidelines were developed without taking into consideration the award of the dependency exemption. Ind. Child Support Guideline 6, cmt. ("Tax Exemptions"). Courts, instead, are instructed to review each case on an individual basis. *Id.*

The Guidelines recommend that, at a minimum, the following five factors be considered, in determining "when to order a release of the exemptions":

1) the value of the exemption at the marginal tax rate of each parent;

2) the income of each parent;

3) the age of the child(ren) and how long the exemption will be available;

4) the percentage of the cost of supporting the child(ren) born by each parent; and

5) the financial burden assumed by each parent under the property settlement in the case.

*Id.*

Taking into account those factors, a "trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of child support available for the child." *See Lamon v. Lamon,* 611 N.E.2d 154, 159 (Ind.Ct. App.1993). In particular, the noncustodial parent bears the burden of demonstrating the tax consequences to each parent of transferring the exemption and how such a transfer would benefit the child. *Id.* In the instant case, Ted has made no attempt to show the tax consequences to either parent of transferring the exemption or how transferring the exemption would benefit E.A. and K.A. *See id.* Therefore, the trial court did not abuse its discretion in denying Ted's request. *See id.*

### D. Attorney Fees

Ted's final argument is that the trial court erred in ordering him to pay the majority of Elizabeth's attorney fees. The Indiana Code authorizes the award of attorney fees to a party seeking modification of child support:

(a) The court periodically may order a party to pay a reasonable amount for:

(1) the cost to the other party of maintaining or defending any proceeding under this chapter, IC 31–16–2 through IC 31–16–10, or IC 31–16–12;

(2) attorney's fees; and

(3) mediation services;

including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

Ind.Code § 31–16–11–1(a). The trial court enjoys broad discretion in determining whether an award of attorney fees would be appropriate, and reversal is only warranted when the trial court's award is clearly against the logic and effect of the facts and circumstances before it. *Bower v. Bower,* 697 N.E.2d 110, 115 (Ind.Ct.App. 1998). In assessing attorney fees, the court may consider such factors as the resources of the parties, their relative earning ability, and the ability to engage in gainful employment. *Id.* The trial court need not give reasons for its determination. *Id.*

In the instant case, Ted makes no contention based on the three factors mentioned above. He complains that Elizabeth's "financial picture" has improved since the divorce decree. Appellant's Br. p. 31. However, Ted's "financial picture" had also improved since the divorce decree. In 2000, Ted earned over $66,000 to Elizabeth's approximate $43,000. While the evidence indicated that the gap between the two incomes has narrowed somewhat for 2001, Ted does not contend that Elizabeth has eclipsed his earning ability. In sum, Ted has presented no evidence that the trial court abused its discretion in awarding partial attorney fees to Elizabeth.

Judgment affirmed in part and reversed in part, and cause remanded for proceedings consistent with this opinion.

SULLIVAN, J., and DARDEN, J., concur.