the trial court is not required to use the advisory sentence." Maj. op. at 1088.

The majority rests its conclusion largely on our Supreme Court's statement in *Jones v. State* that "it is permissible for the trial court to *consider* the same prior offenses for both enhancement of the instant offense and to establish habitual offender status." 600 N.E.2d 544, 548 (Ind. 1992) (emphasis added). The majority apparently believes that the holdings in *Jones* and *McVey* can be reconciled based on a distinction between "enhancing" a sentencing and merely "considering" an aggravating circumstance. I believe such a distinction is illusory. If previous convictions could not justify a sentence increase standing alone, then why would it be proper to consider them along with other factors, as the majority suggests? Stated plainly, a bad aggravator is a bad aggravator.

I do not mean to suggest that *Jones* and *McVey* cannot be reconciled. I would simply note that the holding in *Jones* was borne out of two previous Supreme Court cases in which the defendants had criminal convictions in addition to the felony convictions supporting the habitual offender findings. *See Criss v. State*, 512 N.E.2d 858, 860 (Ind.1987) (noting that defendant had prior convictions for rape, armed robbery, burglary, robbery, confinement, and two counts of second degree burglary); *Darnell v. State*, 435 N.E.2d 250, 256 (Ind. 1982) (defendant had "history of criminal activity which dated back to juvenile offenses and included offenses in Ohio and Illinois *in addition to the prior felonies used as the basis of the habitual offender count.*" (emphasis added)). These holdings are consistent with *McVey* in that the trial court in *McVey* did not rely upon any

additional criminal history beyond the two felony convictions underlying the habitual offender finding.[8] *See Hall v. State*, 769 N.E.2d 250, 254–55 (Ind.Ct.App.2002) (distinguishing *McVey* because "Hall's instant sentence was not aggravated solely because of the prior convictions supporting the habitual offender determination."); *see also Whaley v. State*, 843 N.E.2d 1, 16 n. 11 (Ind.Ct.App.2006) (relying upon *Hall* and noting that the defendant's sentence "was not aggravated solely because of the prior convictions supporting the habitual offender determination."), *trans. denied.*

I would hold that the trial court abused its discretion in finding as an aggravating circumstance the same convictions supporting Pedraza's habitual offender finding. Nonetheless, because the other aggravating circumstances identified by the trial court are sufficient to support Pedraza's sentence, I concur in the result reached by the majority.

Keith A. ADAMS, Appellant–Petitioner,

v.

Lisa A. ADAMS, Appellee–Respondent.

No. 09A02–0701–CV–113.

Court of Appeals of Indiana.

Sept. 25, 2007.

---

**8.** Regarding *Jones,* our Supreme Court's opinion does not reveal whether the defendant had any criminal convictions other than those

used to establish his habitual offender status. 600 N.E.2d at 548.

Jeffrey D. Stanton, Logansport, IN, Attorney for Appellant.

Kelly Leeman, Logansport, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Keith A. Adams appeals the trial court's denials of his petitions for modification of child support. Keith raises two issues, which we revise and restate as:

I. Whether the trial court abused its discretion by denying his motion to correct error regarding his first petition for modification of child support; and

II. Whether the trial court abused its discretion by denying his second petition to modify his child support.

Because we remand to the trial court on Issue I, we do not address Issue II.

The relevant facts follow. Keith and Lisa Adams are the parents of S.A., born November 1996. Keith and Lisa divorced in December 2004. The decree of dissolution provided that the parties would have joint custody with S.A. residing with Lisa. Keith agreed to pay child support in the amount of $90.00 per week. The parties agreed "to this support figure based on an estimate of [Keith's] earnings which have fluctuated in the last two years and his agreement to help with extra curricular activities and expenses." Appellant's Appendix at 9. The decree also ordered that Lisa was entitled to claim S.A. as a tax exemption. At the time of the dissolution, Keith worked as a sales representative for K.E. Foods. He usually worked seven days a week, and he earned $34,940 per year but had $9,294 in unreimbursed travel expenses.

On January 26, 2006, Keith filed a petition for modification of child support. The trial court held a hearing on the petition on April 7, 2006. At the hearing, Keith presented evidence that he was employed at SUS Casting, where he worked the second shift. He had quit his employment as a salesman because of a substantial increase in fuel costs that decreased his income and to avoid traveling as much. At SUS, he was earning $454.40 per week,

and he paid $55.53 per week for health and dental insurance for S.A. He exercised visitation with S.A. every weekend from between noon and 3:00 p.m. on Saturday to 7:00 p.m. on Sunday. Lisa was employed at PCA, LLC, and earned $1,261.06 biweekly. She paid daycare expenses of approximately $41.00 per week.

After the hearing, the parties submitted child support worksheets and memorandums. Keith's proposed child support worksheet showed a recommended support obligation of $43.16 per week. On July 28, 2006, the trial court denied the petition for modification without findings of fact and conclusions thereon. On August 28, 2006, Keith then filed a motion to correct error pursuant to Ind. Trial Rule 59. Keith argued that "the evidence received at trial supported the fact that [Keith's] child support obligation should be substantially less than that ordered in the Decree due to the parties' respective incomes and the cost of daycare and insurance." *Id.* at 20.

On August 30, 2006, Keith filed a second petition to modify child support. On October 3, 2006, Keith also filed a petition to modify the decree of dissolution regarding the tax dependency.[1] At a joint hearing on the motion to correct error, the second petition to modify child support, and the petition to modify the tax dependency, Keith testified that his health and dental insurance expenses for S.A. had increased seven to eight dollars per week since the last hearing and that his hourly pay had increased to $12.04 per hour. Lisa testified that she no longer paid after school daycare for S.A. but still paid daycare for the summer and school vacation periods.

Pursuant to a request for findings of fact and conclusions thereon under Ind. Trial Rule 52, the trial court issued the following findings of fact and conclusions thereon:

### MOTION TO CORRECT ERROR

1. That on January 26, 2006, [Keith] filed a Verified Petition for Modification of Weekly Child Support.

2. That on or about April 7, 2006, the parties appeared in person and by counsel for hearing, and the court received evidence in the form of testimony and documents.

3. That the Court took the matter under advisement and instructed the parties to submit Child Support Worksheets.

4. That the parties also submitted memoranda in support and in opposition of [Keith's] [petition] to modify support.

5. That on July 28, 2006, the court forwarded a docket entry stating that [Keith's] Verified Petition to Modify Weekly Child Support is denied.

6. The Court having reviewed the evidence, and the submissions of counsel now finds no error in the Order of July 28, 2006, and the Motion to Correct Error is DENIED.

### VERIFIED PETITION TO MODIFY CHILD SUPPORT AND PETITION TO MODIFY DECREE OF DISSOLUTION WITH REGARD TO TAX DEPENDENCY

1. On August 30, 2006, [Keith] filed his Verified Petition to Modify Child

---

1. We remind the parties that Ind. Appellate Rule 50(A) requires that an Appellant's Appendix contain "pleadings and other documents from the Clerk's Record ... that are necessary for resolution of the issues raised on appeal." Neither the Appellant's Appendix nor the Appellee's Appendix contain the first petition for modification of child support, memorandums regarding the petition, the second petition for modification of child support, or the petition to modify the decree of dissolution regarding the tax dependency.

Support, alleging that since the hearing on April 7, 2006, and the Order entered thereon of July 28, 2006, there has been a substantial and continuing change of circumstances to warranting [sic] a modification of child support, and alleging as a basis that there has been a change in the cost of insurance which [Keith] pays in behalf of the child, that there has been a reduction in the cost of daycare, and that [Keith] wishes to have all or a portion of the benefit of claiming the child for tax exemption.

2. [Keith] alleges that due to the increase in health insurance premiums, [Keith's] weekly child support obligation should be modified (reduced) to reflect an appropriate level of child support.

3. The evidence revealed at hearing on December 19, 2006, is that the cost of the dependent child's portion of the insurance coverage rose from $50.18 per week on April 7, 2006, to a current cost of $53.32 per week.

4. There has been a reduction in the expenditure for daycare. Since [S.A.] is older and deemed trustworthy by [Lisa], the cost of daily after-school care for an hour and a half has been eliminated, and also a change in daycare providers now means that there is a charge only for days when day care is actually provided. Daycare is thus principally a summer expense, with some days of school term holiday breaks also occasionally required.

5. [S.A.] is now taking piano lessons at $14.50 per lesson, and the parties appear to be complying with prior Orders concerning matters of paying for school books, fees, activities and clothes.

6. Allocation of the benefit of claiming the child as an exemption for tax purposes is a form of child support.

7. [Keith's] wage rate has increased since April 7, 2006, by either 34 or 44 cents per hour, according to [Keith's] testimony.

8. There has been no change in [Lisa's] weekly income since April 7, 2006.

\* \* \* \* \* \*

## CONCLUSIONS OF LAW

1. The Court may modify a prior order as to support "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable"; or "upon a showing that (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent from the amount that would be ordered by applying [the] Child Support Guidelines; and the order requested to be modified or revoked was issued at least twelve months before the petition requesting modification was filed." I.C. 31–16–8–1.

2. Since April 7, 2006, there have been no changes in circumstances so substantial and continuing as to make the terms of the Order entered thereon unreasonable.

3. No justification has been established as a matter of law to modify the Order of July 28, 2006.

*Id.* at 6–8.

 The dispositive issue is whether the trial court abused its discretion by denying Keith's motion to correct error regarding his first petition for modification of child support. The standard of appellate review of trial court rulings on motions to correct error is abuse of discretion. *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.

2003). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.* As Keith had the burden of proof in establishing circumstances to support the modification of child support, he appeals from a negative judgment, which will be reversed only if there is no evidence to support the trial court's conclusion. *Counceller v. Counceller,* 810 N.E.2d 372, 377 (Ind.Ct.App.2004); *Holiday v. Holiday,* 644 N.E.2d 880, 882 (Ind.Ct.App.1994).

The modification of a child support order is governed by Ind.Code § 31–16–8–1, which provides:

> Provisions of an order with respect to child support ... may be modified or revoked. Except as provided in section 2 of this chapter, modification may be made only:
>
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>
> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Keith had the burden of establishing that he was entitled to have the child support order modified. *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940 (Ind.2005).

Keith seems to argue that he met his burden of demonstrating changed circumstances so substantial and continuing as to make the terms unreasonable and a twenty percent deviation. Lisa argues that, because the initial $90 per week support order was based upon an agreement between the parties, Keith was required to show changed circumstances so substantial and continuing as to make the terms unreasonable pursuant to *Hay v. Hay,* 730 N.E.2d 787, 795 (Ind.Ct.App.2000).

In *Hay,* another panel of this court held in dicta that "when a parent has agreed to pay support in excess of the guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification." *Hay,* 730 N.E.2d at 795. We recently disagreed with *Hay* in *In re Marriage of Kraft,* 868 N.E.2d 1181 (Ind. Ct.App.2007). There, we held that, "despite an agreement between the parents regarding child support, the child support order may be subsequently modified." *Kraft,* 868 N.E.2d at 1188. We concluded that, based upon *Meehan v. Meehan,* 425 N.E.2d 157 (Ind.1981), we are required to "interpret Ind.Code § 31–16–8–1 as it is written regardless of whether the child support order has been entered pursuant to the terms of a settlement agreement and regardless of whether the agreement to pay child support is in excess of the guidelines." *Id.* at 1189. Consequently, Keith could show that he was entitled to a modification of child support by showing either changed circumstances so substantial and continuing as to make the terms unreasonable or a twenty percent deviation.

The original dissolution decree, which was issued in December 2004, set the child support at $90 per week. Keith filed his petition for modification more than twelve months later in January 2006. Keith presented evidence that his current child support should be $43.16 per week, which is

more than a twenty percent deviation, and Lisa does not dispute that this calculation is correct under the Ind. Child Support Guidelines.

■ Although the trial court did not enter findings of fact and conclusions thereon giving the reasons for its denial of Keith's petition for modification of child support or the motion to correct error, Keith seems to argue that the trial court denied his petition for modification because it imputed income to him. "Where a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income." *Garrod v. Garrod,* 590 N.E.2d 163, 168 (Ind.Ct.App.1992), *reh'g denied.*

> When a parent has some history of working and is capable of entering the work force, but voluntarily fails or refuses to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income should be determined to be a part of the gross income of that parent. The amount to be attributed as potential income in such a case would be the amount that the evidence demonstrates he or she was capable of earning in the past.

Child Supp. G. 3, cmt. 2(c)(2). However, "child support orders cannot be used to 'force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks.'" *Abouhalkah v. Sharps,* 795 N.E.2d 488, 491 (Ind.Ct.App.2003) (quoting *In re E.M.P.,* 722 N.E.2d 349, 351–52 (Ind. Ct.App.2000)).

Because the trial court did not issue findings of fact and conclusions thereon, we do not know whether the trial court deviated from the Child Support Guidelines by imputing income to Keith. "There is a rebuttable presumption that an award of child support based on application of the Guidelines is the correct amount." *Sims v. Sims,* 770 N.E.2d 860, 864 (Ind.Ct.App. 2002); Ind. Child Support Rule 2. "If a court concludes that a particular amount reached by application of the Guidelines would be unjust, then it must 'enter a written finding articulating the factual circumstances supporting that conclusion.'" *Sims,* 770 N.E.2d at 864 (quoting Ind. Child Support Rule 3). "For this reason, the trial court was required to enter written findings detailing the circumstances making application of the Guidelines unjust." *Id.* (citing Child Supp. R. 3). Therefore, we remand this cause to the trial court for entry of findings showing why application of the Guidelines would be unjust in the instant case. *See, e.g., id.*

For the foregoing reasons, we remand for proceedings consistent with this opinion.

Remanded.

RILEY, J. and FRIEDLANDER, J. concur.