Craig CROSS, Appellant–Respondent,

v.

Victoria CROSS, Appellee–Petitioner.

No. 49A05–0802–CV–94.

Court of Appeals of Indiana.

Aug. 7, 2008.

Janet L. Manship, Pritizke & Davis, Greenfield, IN, Attorney for Appellant.

Brian M. Kubicki, Brian R. Gates, Jones Obenchain, South Bend, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Craig Cross appeals the trial court's grant of Victoria Cross's petition for modification of child support and the denial of his petition to claim their children for tax exemption purposes. Craig raises five issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion by granting Victoria's motion to withdraw admissions;

II. Whether the trial court abused its discretion by granting Victoria's petition for modification of child support; and

III. Whether the trial court erred when it denied Craig's petition to claim their children for tax exemption purposes.

We affirm in part, reverse in part, and remand.

The relevant facts follow. Craig and Victoria are the parents of J.C., born November 1989, and V.E.C., born June 1981. Craig and Victoria's marriage was dissolved in August 2001. Pursuant to the decree of dissolution, Victoria was awarded custody of their two children, and Craig was ordered to pay child support in the amount of $100 a week.

On August 12, 2005, Victoria filed a petition for modification of child support. On September 8, 2005, Craig served discovery requests on Victoria, including a request for admissions seeking to establish that V.E.C. was an emancipated child under Ind.Code § 36–16–6–6. Victoria failed to respond timely to the request for admissions.

At a hearing on October 12, 2005, the trial court informed Victoria, who was given another copy of Craig's request for admissions, that she must respond to that request within thirty days. In January 2006, Victoria was appointed pro bono counsel, and, on January 26, 2006, she submitted a response to the request for admissions denying that V.E.C. should be emancipated. On February 22, 2006, Craig filed a petition to claim their children for tax exemption purposes.

At a hearing on April 18, 2006, Victoria began to present evidence that V.E.C. was autistic and "unemployable." April 18, 2006 Transcript at 4. Craig objected that Victoria had failed to respond timely to his request for admissions concerning V.E.C.'s emancipation, which, he argued, should be deemed admitted by operation of law. The trial court took the matter under advisement and directed the parties to submit proposed orders and memoranda on the issue. On May 1, 2006, before the trial court had ruled on the issue, Victoria filed a motion to withdraw the admissions deemed admitted by operation of law under Ind. Trial Rule 36(B). On June 12, 2006, the trial court granted Victoria's motion to withdraw admissions.

On January 22, 2008, the trial court held another hearing on the petitions of both parties. Craig renewed his objection to the presentation of "any evidence concerning disability of [V.E.C.] that would have been deemed admitted by way of the request for admissions." January 22, 2008 Transcript at 4. The trial court did not specifically rule on the objection but allowed Victoria to present evidence that V.E.C. is autistic and cannot care for herself. Because of this disability, V.E.C. receives $111 a week in Supplemental Security Income ("SSI"). Victoria further presented evidence that, in caring for V.E.C., she can only work part-time "at a job that affords her the opportunity of bringing [V.E.C.] with her." *Id.* at 14. Accordingly, Victoria works as a healthcare provider for an Alzheimer's patient. Victoria testified that she pays a neighbor thirty dollars a week to watch V.E.C. for a few hours and "relieve" Victoria of her "constant supervision" of V.E.C. *Id.* at 23–24. Victoria also noted that, in 2003, she did not file a tax return because she did not have sufficient income, but that she filed tax returns in subsequent years. Craig argued that Victoria should be credited with V.E.C.'s SSI payments and

that his child support payments should be reduced accordingly.

After the hearing, the trial court ordered that Victoria continue to claim both children for tax exemption purposes but ordered her to inform Craig by February 1 st after each tax year for which she does not file a tax return. The trial court held that Craig may amend his tax return for 2003 and claim their children "so long as no penalty will be assessed to [Victoria]." Appellant's Appendix at 9. The trial court also held that Craig is "not entitled to any credit from his child support order" in light of V.E.C.'s SSI payments and, after crediting Victoria for the weekly expenditure of $30 for "work related daycare," ordered Craig to pay $139 a week in child support. *Id.* at 9–10. Thus, the trial court granted Victoria's petition for modification of child support and, except for his 2003 tax return, denied Craig's petition to claim their children for tax exemption purposes.

## I.

 The first issue is whether the trial court abused its discretion by granting Victoria's motion to withdraw admissions. Under Ind. Trial Rule 36, the failure to respond in a timely manner to a request for admissions causes those matters to be admitted and conclusively established by operation of law.[1] Ind. Tr. R. 36; *City of Muncie v. Peters,* 709 N.E.2d 50, 54–55 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* Requests for admissions under Ind. Trial Rule 36 may, in addition to seeking evidentiary matters, ask for admissions as to legal issues, contentions, and conclusions, if related to the facts of the case. *Id.* (citing *General Motors Corp. v. Aetna Cas. & Sur. Co.,* 573 N.E.2d 885, 888 (Ind.1991)). Matters admitted under the rule are deemed "conclusively established," eliminating the need to prove them at trial. *Id.*

 However, the party deemed to have made those admissions may move the trial court for withdrawal of those admissions pursuant to Ind. Trial Rule 36(B).[2] *Id.* The trial court cannot grant a motion to withdraw admissions unless it determines both that: (1) withdrawal or amendment will subserve the presentation of the merits; and (2) prejudice in maintaining the action or defense will not result to the

---

**1.** Ind. Trial Rule 36(A) provides in relevant part:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request, including the genuineness of any documents described in the request.

\* \* \* \* \*

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within a period designated in the request, not less than thirty [30] days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. . . .

**2.** Ind. Trial Rule 36(B) provides:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

party obtaining the admission. *Id.* The party seeking withdrawal has the burden of demonstrating that the presentation of the merits will be subserved by withdrawal, and the party who has obtained the admissions has the burden of demonstrating that it will be prejudiced if the trial court permits withdrawal. *Id.* (citing Ind. Trial Rule 36(B)). Further, even if both of these conditions are satisfied, the rule does not compel the trial court to grant a request to withdraw admissions; rather, the court may, in its discretion, permit withdrawal. *Id.* at 55 (citing *General Motors,* 573 N.E.2d at 889). We will reverse the grant or denial of a motion to withdraw admissions only for an abuse of discretion. *Id.*

In discussing the limits of the discretion in ruling on a motion to withdraw admissions, the Indiana Supreme Court stated as follows:

> Although an admission should ordinarily be binding on the party who made it, there must be room in rare cases for a different result, as when an admission no longer is true because of changed circumstances or through honest error a party has made an improvident admission. However, ... [u]nless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated.

*General Motors,* 573 N.E.2d at 889 (citations omitted).

Craig argues that Victoria "submitted no evidence subsequent to the [April 18, 2006] hearing[ ] that the merits of the case would be subserved if withdraw [sic] was ... granted." Appellant's Brief at 13. However, in *General Motors,* the Indiana Supreme Court held that the trial court did not abuse its discretion by denying the

defendant's motion to withdraw admissions where:

> Neither [the defendant's] motion to withdraw admissions nor its supporting memorandum presented the trial court with any claim or indication that its failure to timely respond was inadvertent, that it had nevertheless continued to actively contest the issues involved in the challenged admissions, or that [the plaintiff] was aware that [the defendant] intended to contest the admitted issues at trial.

*General Motors,* 573 N.E.2d at 889.

■ We note that Victoria's belated response to Craig's request for admissions denied much of the factual assertions in support of Craig's argument that V.E.C. should be emancipated. At the April 18, 2006 hearing, Victoria began to present evidence that V.E.C. is autistic and "unemployable." April 18, 2006 Transcript at 4. Finally, we note that, on May 12, 2006, Victoria was declared V.E.C.'s guardian because of V.E.C.'s disability. We conclude that Victoria actively continued to contest the issue of V.E.C.'s emancipation and that Craig was aware that Victoria intended to contest the admitted issues. Thus, Victoria made a sufficient showing that withdrawal of the admissions would subserve the presentation of the merits.

■■ Victoria, on the other hand, argues that Craig has failed to show that he was prejudiced by the trial court's grant of her motion to withdraw admissions. In the context of Ind. Trial Rule 36(B), "prejudice" does not mean that the party who has obtained the admission will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of its case. *City of Muncie,* 709 N.E.2d at 55. For example, prejudice under the rule may be shown where the party who obtained the admission is

unable to produce key witnesses or present important evidence. *Id.* (citing *Corby v. Swank*, 670 N.E.2d 1322, 1326 (Ind.Ct. App.1996); *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313–1314 (8th Cir. 1983)).

Here, we note that, after the trial court granted Victoria's motion to withdraw admissions, Craig had a year and six months to prepare his case for the January 22, 2008 hearing. Given that Craig had ample time to produce key witnesses and gather important evidence, we agree with Victoria that he has failed to show that he was prejudiced by the withdrawal of Victoria's admissions. Although we understand Craig's frustration concerning Victoria's repeated failure to respond timely to his request for admissions and we condemn such behavior on the part of litigants, nevertheless, we cannot say that the trial court abused its discretion by granting Victoria's motion to withdraw admissions.

## II.

The next issue is whether the trial court abused its discretion by granting Victoria's petition for modification of child support. In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion.[3] *In re E.M.P.*, 722 N.E.2d 349, 351 (Ind.Ct.App.2000). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

The modification of a child support order is governed by Ind.Code § 31–16–8–1, which provides:

Provisions of an order with respect to child support ... may be modified or revoked. Except as provided in section 2 of this chapter, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Victoria had the burden of establishing that she was entitled to have the child support order modified. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005).

Craig argues that the trial court abused its discretion by failing to include V.E.C.'s SSI in its determination of his child support obligation. He also argues that the trial court abused its discretion by crediting Victoria with her weekly child care

---

**3.** The Indiana Supreme Court has noted that the standard of review in family law matters has been phrased as both "abuse of discretion" and "clear error." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind.2005). "[T]his deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children— the kind of qualities that appellate courts would be in a difficult position to assess." *Id.* (citing Hon. Denise R. Johnson, Address at the 2004 Appellate Judges Summit (Nov. 13, 2004)).

payments. We will address his contentions separately.

### A. Supplemental Security Income

V.E.C. receives $111 a week in SSI. Craig argues that this sum should be considered as part of Victoria's income in calculating his child support obligations, which, he argues, should be reduced to $44.55 a week accordingly. We note that, under the Indiana Child Support Guidelines, SSI received by the parent is specifically excluded from the parent's weekly gross income. *See* Ind. Child Support Guideline 3(A) (defining "weekly gross income" and specifically excluding "benefits from means-tested public assistance programs, including, but not limited to, Temporary Aid To Needy Families (TANF), Supplemental Security Income, and Food Stamps").

█ Moreover, we have previously rejected Craig's argument. *See Kyle v. Kyle,* 582 N.E.2d 842, 846 (Ind.Ct.App. 1991), *reh'g denied, trans. denied.* In *Kyle,* we reasoned:

The Supplemental Security Income Program, Title XVI of the Social Security Act, is a social welfare program for the aged, blind, and disabled. See 42 U.S.C. § 1382c(a)(1) (1983 & Supp.1990). Eligibility is based on need: SSI is paid to families of disabled children qualifying under the Act to ensure that the recipient's needs are met at a subsistence level. Ruppert & Weinland, *Developments in Social Security Law,* 24 Ind. L.Rev. 1109, 1110 (1991). Congress included disabled children under the SSI program in the:

belief that disabled children who live in low-income households are certainly among the most disadvantaged of all Americans and that they are deserving of special assistance in order to help them become self-supporting members of our society. Making it possible for disabled children to get benefits under this program, if it is to their advantage, rather than under the programs for families with children, would be appropriate because their needs are often greater than those of nondisabled children.

H.R.Rep. No. 92–231, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News 4989, 5133–5134.

SSI benefits received by a disabled child are intended to supplement other income, not substitute for it. *Oatley v. Oatley* (1977), 57 Ohio App.2d 226, 387 N.E.2d 245. Accordingly, the noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child. *Id.* SSI benefits represent gratuitous contributions from the government and do not reduce the noncustodial parent's child support obligation. *In re Marriage of Thornton* (1990), Colo.App., 802 P.2d 1194.

Congress determined that disabled children generally have greater needs than nondisabled children. We believe that SSI benefits paid to a family with a disabled child serve to bring that family back on a par with families without disabled children. Under the rationale of the authority set out above, we find the trial court abused no discretion in refusing to deviate from the guideline amount of support based on the SSI benefits. Therefore, we find no error.

*Id.* For the same reasons, we hold that the trial court did not abuse its discretion by failing to include V.E.C.'s SSI in its determination of Craig's child support obligation.[4]

---

4. Craig relies on *Thompson v. Thompson,* 868 N.E.2d 862 (Ind.Ct.App.2007), for the propo-

## B. *Weekly Child Care Payments*

 The trial court credited Victoria for her weekly expenditure of $30 for "work related daycare." Appellant's Appendix at 9. Craig argues that "the 'daycare' expenses claimed by [Victoria] were not incurred in connection with [her] employment or for [her] to actively seek employment." Appellant's Brief at 23. We agree.

Indiana Child Support Guideline 3(E)(1), which governs work-related child care expenses, provides:

Child care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children *while the parent works or actively seeks employment.* Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children. Child care costs required for active job searches are allowable on the same basis as costs required in connection with employment.

(Emphasis added). The commentary to the guideline provides:

Work-related child care expense is an income-producing expense of the parent. Presumably, if the family remained intact, the parents would treat child care as a necessary cost of the family attrib-

utable to the children when both parents work. Therefore, the expense is one that is incurred for the benefit of the child(ren) which the parents should share.

Ind. Child Support Guideline 3(E) cmt. 1.

Here, the record reveals that Victoria brings V.E.C. with her while she works as a healthcare provider. Victoria testified that she pays a neighbor thirty dollars a week to watch V.E.C. and "relieve" Victoria of her "constant supervision" of V.E.C. January 22, 2008 Transcript at 23–24. As Victoria's child care expense is neither work-related nor income-producing, it does not fall within the provisions of the Child Support Guidelines. *See, e.g., Mullin v. Mullin,* 634 N.E.2d 1340, 1343 (Ind.Ct. App.1994) (holding that mother's baby-sitting expense was neither work-related nor income-producing).

We note that the daycare cost could have been credited to Victoria by deviating from the guidelines pursuant to Indiana Child Support Rule 3, which provides: "If the court concludes from the evidence in a particular case that the amount of the award reached through the application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting its conclusion." Here, although it deviated from the guidelines in crediting Victoria

---

sition that "*all funds* paid to or on behalf of a child by sources outside the family unit should be considered and treated in a similar fashion with the ultimate result being net income available to the child comparable to that which the child would have enjoyed had the marriage remained intact." Appellant's Brief at 19. Craig does not provide a pinpoint cite to the case for this assertion, and we are unable to find support for it. Moreover, we agree with Victoria that *Thompson* offers "limited guidance" in the present case, as it addresses social security retirement and disability benefits, which function as a substi-

tute for income, and not SSI, which functions as a supplement to income. Appellee's Brief at 21.

Craig also cites the commentary to Ind. Child Support Guideline 3(F) for the proposition that, "with respect to an incapacitated adult child, the Court may consider the income of the child in apportioning the child support obligation...." Appellant's Brief at 23. The commentary cited by Craig, however, discusses the *earned* income of incapacitated adult children. *See* Ind. Child Support Guideline 3(F) cmt. 2.

with her daycare payments, the trial court failed to enter such a finding. Accordingly, we reverse the trial court's order crediting Victoria for work related daycare. *See, e.g., Roydes v. Cappy,* 762 N.E.2d 1268, 1277 (Ind.Ct.App.2002) (reversing the trial court's order that the father pay the custodial parent "$60 weekly toward child care expenses" where the custodial parent was retired).

### III.

The final issue is whether the trial court erred when it denied Craig's petition to claim their children for tax exemption purposes. "Generally, the custodial parent automatically receives the dependent tax exemptions for the minor children; however, the custodial parent may execute a written waiver of the exemption for a particular tax year." *Eppler v. Eppler,* 837 N.E.2d 167, 178 (Ind.Ct.App.2005), *trans. denied.* Child Support Guideline 6, which addresses income tax exemptions, provides:

Development of these Guidelines did not take into consideration the awarding of the income tax exemption. Instead, it is recommended that each case be reviewed on an individual basis and that a decision be made in the context of each case. Judges and practitioners should be aware that under current law the court cannot award an exemption to a parent, but the court may order a parent to release or sign over the exemption for one or more of the children to the other parent pursuant to I.R.C. s 152(e).... Judges may wish to consider ordering the release to be executed on an annual basis, contingent upon support being current at the end of the calendar year for which the exemption is ordered as an additional incentive to keep support payments current. It may also be helpful to specify a date by which the release is to be delivered to the other parent each

year. Shifting the exemption for minor children does not alter the filing status of either party.

In determining when to order a release of exemptions, it is recommended that at minimum the following factors be considered:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case.

"Taking into account those factors, a 'trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of child support available for the child.'" *Eppler,* 837 N.E.2d at 179 (quoting *Sims v. Sims,* 770 N.E.2d 860, 867 (Ind.Ct.App.2002)). The noncustodial parent must demonstrate the tax consequences to each parent as a result of transferring the exemption and how such transfer would benefit the children. *Id.*

Craig argues that he should be entitled to the tax exemptions for the children for the remainder of the years the children are eligible because "the value of the exemption at the marginal tax rate of each parent is more beneficial to [him]." Appellant's Brief at 27. However, Craig has failed to demonstrate what the tax consequences would be to each parent as a result of transferring the exemption. More importantly, Craig has failed to demonstrate, much less argue, how such a transfer would benefit the children. Accordingly, the trial court did not err when

it denied Craig's petition to claim the children for tax exemption purposes. *See, e.g., Eppler,* 837 N.E.2d at 179 (Ind.Ct. App.2005) (holding that the trial court did not err in concluding that ordering that wife be entitled to tax exemptions for the children where husband "fail[ed] to specifically demonstrate the tax consequences to the parties if the exemption were transferred and, most importantly, how such transfer would benefit the children"); *Sims,* 770 N.E.2d at 867 (holding that the trial court did not abuse its discretion in denying father's request to claim children for tax purposes where father made no attempt to show the tax consequences to either parent of transferring the exemption or how transferring the exemption would benefit the children); *Harris v. Harris,* 800 N.E.2d 930, 941 (Ind.Ct.App. 2003) (concluding that the record did not support the trial court's findings that it would be reasonable to re-allocate the tax dependency exemptions where the record was silent as to consequences of transferring the exemption and how such transfer would benefit the children), *trans. denied.*

For the foregoing reasons, we affirm the trial court's grant of Victoria's motion to withdraw admissions, its exclusion of V.E.C.'s SSI from its determination of Craig's child support obligation, and its denial of Craig's petition to claim the children for tax exemption purposes. We reverse the trial court's order crediting Victoria for her daycare expenditure and remand for proceedings consistent with this opinion. In this regard, the trial court is free to enter a written finding articulating its reasons for deviating from the Child Support Guidelines or, alternatively, to adjust Craig's child support obligation without crediting Victoria for the daycare expenditure.

Affirmed in part, reversed in part, and remanded.

MATHIAS, J., concurs.

BAKER, C.J., dissents in part with separate opinion.

BAKER, Chief Judge, dissenting in part.

I respectfully dissent from the majority's conclusion regarding Victoria's weekly childcare expenses. I believe that the majority's application of the Child Support Guidelines is overly literal. The record herein reveals that Victoria was a full-time caregiver for her disabled daughter and a part-time caregiver for a patient with Alzheimer's Disease. In fact, Victoria often cared for both at the same time, bringing her daughter with her to the patient's home. It is certainly reasonable that Victoria sought a break from her responsibilities once a week for five hours. That break likely gave Victoria an opportunity to relax and recharge so that she could continue to care for her daughter and maintain her paying job.

In other words, I believe that the childcare cost *was* work related, inasmuch as that brief weekly break enabled Victoria to continue to work and receive an income. As aptly put by Victoria,

> [a]llowing her a five-hour break once a week gives Victoria a small bit of what most everyone else who has a job gets—some time away from their immediate family responsibilities. If Victoria is using this time as a break, it is to give her the respite necessary to handle both the duties at her job and the responsibilities she has as [her daughter's] full-time care-giver. In that way, the cost of care while she gets this time is incurred due to her employment.

Appellee's Br. p. 23–24. I agree with this analysis and, consequently, would affirm this portion of the trial court's order. In

all other respects, I concur with the majority opinion.